FISHER & JOHNSON *vs.* CAMPBELL.

1. An agent, acting within the scope of his authority, binds his principal.

2. The overseer of a plantation, as such, has no right to bind his employer, by the purchase of articles which he may suppose necessary. Such authority is not necessary, to enable him to perform the duties incident to his station, and therefore he cannot be presumed to be invested with it.

3. A master, being entitled to the labor of his slaves, is bound to provide for their wants.

4. And where no provision is made by an absent master for their subsistence, an overseer may procure necessary supplies on account of the owner, on the same principle that a father is liable to support his children.

5. There is no usage in this State, which authorises an overseer to purchase necessaries, for the maintenance of the slaves of an absent master, and thus bind the master contrary to his wishes.

6. The authority of an agent may be implied from his previous employment in similar acts, and from subsequent acquiescence.

7. An authority delegated to an agent, must be strictly pursued, in form as well as in substance.

8. When a person deals with one who professes to be agent of another; the person contracting with him is bound to know the extent of his authority.

9. If one be held out to the world as the general agent of another, particular instructions not communicated, will not prevent the agent from binding his principal, even when he acts in disregard of such particular instructions.

10. A partner can receive his individual debt, in payment of goods sold by him belonging to the firm.

Fisher & Johnson *vs.* Campbell.

Error to Lowndes county Circuit court.

Assumpsit, for goods sold and delivered—tried before *Harris*, J.

This action of assumpsit, was brought by the plaintiffs, against the defendant, in the court below, for goods, wares and merchandise. There was a verdict and judgment for the defendant, on the plea of non-assumpsit.

Upon the trial of the cause, a bill of exceptions was tendered by the plaintiffs, from which it appears that the defendant is a resident of South Carolina, and has a plantation, and a large number of hands, in Lowndes county, in this State, where he was making a crop, and that one McMoy had charge of the plantation and hands, as an overseer—that while said defendant was absent from the State, it became necessary to purchase pork for the slaves—that he, the said McMoy, called upon the plaintiffs, and purchased and received of them eight barrels of pork, for the said slaves, and directed the same to be charged to the defendant, his employer, which pork was used by the said slaves. The defendant then proved by said McMoy, that he had given the said McMoy directions to buy pork for his slaves of a particular mercantile house at Montgomery, with whom he had made arrangements for that purpose, and had given him no directions to buy any where else, nor had he any authority to purchase of any other person. That said McMoy purchased the pork at the Montgomery prices, and chose to purchase it of the plaintiffs, on account of the bad state of the roads to Montgomery. It was also proved, that it was customary for overseers to purchase things necessary for their farms, &c. It was also further proved, that

said Fisher agreed with said McMoy, that if he would get a certain individual debt on him, the said Fisher, that the same should be received in part payment of the pork—about forty dollars. It was also proved, that the house in Montgomery at all times furnished provisions when called on by McMoy.

Upon this evidence, the plaintiffs requested the court to charge the jury, that if they believed from the evidence, that the said McMoy was the general agent of the defendant, in the conduct and management of said plantation and slaves, that the said pork was necessary, and was used for the benefit of the defendant in good faith, that any special directions given by the defendant to the said McMoy, as to the place of purchasing, was wholly immaterial, as to this purchase, unless from the evidence, they were satisfied that plaintiffs were informed at the time of such sale, of such special directions, and that without this information, the plaintiffs would be entitled to recover, if the proof was fully made out.

This charge, the court refused to give, but charged the jury, that if McMoy's agency was special, and he was directed by defendant to purchase pork of a particular house at Montgomery, and had not been directed or authorised by defendant to purchase any where else, that the defendant was not bound to pay for them.

The plaintiff requested the court to charge the jury, that Fisher had no right to sell the pork belonging to the firm of Fisher & Johnson, and to receive in payment therefor his (Fisher's) note; which charge the court refused to give. An exception was taken to the refusal to charge, and to the charge as given; and the matters of law arising thereon are now assigned as error.

*Cook*, for plaintiff in error.

ORMOND, J.—That an agent, while he acts within the scope of his authority, can bind his principal, admits of no controversy. The difficulty attending such cases in general, is to ascertain whether the person professing to act as agent had authority to bind his principal, either express or implied. Thus, in this case, the question to be settled is, whether McMoy had authority, either express, or arising by necessary implication from his employment by the defendant, to bind him in the purchase of the pork, for the price of which this suit is brought.

The first charge moved for, assumes that as McMoy was the overseer of the defendant, and had the charge of his slaves—as the pork purchased by him from the plaintiffs was wanted for the use of the slaves, and was in fact consumed by them—that although there was not only no authority given by the defendant to McMoy, to buy the pork of the plaintiffs, but a special direction to get it elsewhere, where arrangements had been made to procure it by the defendant—that unless this fact was known to the plaintiffs, they are entitled to recover.

To a proper understanding of the propriety of this charge, in reference to the facts of the case, it will be necessary to consider separately the different facts and assumptions which it contains.

And first, it cannot be maintained, that the overseer of a plantation, as such merely, has the right to bind his employer by the purchase of articles which he may suppose necessary for the use of the plantation. Such authority is not necessary to enable him to perform the du-

Fisher & Johnson *vs.* Campbell.

ties incident to his station, and therefore he cannot be presumed to be invested with such power by his employer.

It seems, however, to be supposed, that the now residence of the defendant created a necessity for investing him with power to procure by purchase, the necessary subsistence for the slaves under his control. But the fact, that no such necessity existed, is evident from the proof on the record, that the defendant had made arrangements to get the pork at Montgomery, and the only reason assigned for getting it of the plaintiffs is, that it was more convenient to do so.

The master being entitled to the labor of his slaves, is bound by the common dictates of humanity, as well as by the law of the land, to provide for their wants; and if no provision had been made for their subsistence, we should hold that the overseer would have had the right to procure the necessary supplies, on account of the defendant, on the same principle that a father is bound to support his children, and might, under peculiar circumstances, be liable for necessaries furnished to them without his knowledge or consent—(See Owen vs. White, at the June term, 1837, of this court.)

It was also proved, that it was customary for overseers similarly situated, to purchase things necessary for their farms, &c. It will scarcely be contended, that such a usage as this exists in this State, so as to have the force of law, and be binding on employers generally; and if not, it proves nothing more, than that some planters are in the practice of sanctioning such purchases, but it by no means follows, that others, who have not assented to it, are bound by it.

Fisher & Johnson *vs.* Campbell.

The next inference of the charge is, "that as the pork was necessary, and was used for the benefit of the defendant in good faith," he is therefore liable. The authority of an agent may be implied from his previous employment in similar acts, or from subsequent acquiescence.

Thus, if a servant buy articles without authority, and they come to the master's use with his *knowledge*, it will be an affirmance of the act. But the mere fact, as in this case, that the articles purchased came to the use of the employer *without his knowledge*, will not bind him. To maintain that it would have that effect, would be to permit one to constitute himself the judge of what was fit, and proper and necessary for another, without his consent. It would, in substance, be a permission to a stranger, to create the relation of debtor and creditor, probably against the will, and certainly without the consent, of the party sought to be charged.

The mere fact, that the provisions were consumed by the slaves of the defendant, is not sufficient to charge him legally; how far it should bind him in honor, or in conscience, is a question which the defendant can best solve. It cannot influence the opinion of the court.

The last branch of the charge is stated as a corollary from the preceding propositions: "that any special directions given to McMoy by the defendant, as to the place of purchasing, was wholly immaterial as to this purchase, unless from the evidence, they were satisfied that plaintiffs were *informed*, at the time of such sale, of such special directions, and that without this information, the plaintiffs would be entitled to recover, if the proof was fully made out."

We understand the law to be the exact converse of this proposition, when a person deals with one who professes to be the agent of another person, the person contracting with him, is bound to know the extent of his authority. It has been shown, that McMoy had no authority to bind the defendant, in consequence of being his overseer : nor was he a general agent. His agency, then, if any existed, was special, and all persons dealing with him, as such, are confined to its terms. "An authority delegated to an agent, must be strictly pursued in form, as well as in substance—(See Banoyer vs. Hovey et al. 5 Mass. R. 37.) In the same case, it was held, "that an agent, having authority to purchase goods to a limited extent, for his principal, is not thereby entrusted with power by his principal, to borrow money on his credit."

It is, however, unnecessary to cite cases to establish a principle so consonant to reason and common sense, and so well established as this. It is true, that if one be held out to the world, as the general agent of another, particular instructions not communicated, will not prevent the agent from binding his principal, even when he acts in disregard of such particular instructions. But in this case, there was no authority delegated to buy the pork, general or special, but a mere direction to obtain it at a particular place, where it had been provided. It follows, therefore, that the seller cannot look to the defendant.

The relevancy of the second charge moved for, is not perceived.

In what manner will it aid in settling the question mooted in this case, to determine whether one partner

Fisher & Johnson *vs*. Campbell.

can receive his individual debt in payment of goods sold by him belonging to the firm? It is probable, however, that the fact was used on the argument of the cause in the court below, as conducing to shew the true character of the transaction, and that the sale was in fact made to McMoy; but it is not presented here in connection with the controversy, so as to make it necessary that the court should determine it: but if it were important, we should not hesitate to say, that a partner would have such power.

There is no error in the judgment of the court, and it is affirmed.