## PATTERSON, AND OTHERS v. WARE.

1. The defence arising under the statute of frauds must be pleaded, and if waived, and the contract admitted, or established by proof, it will be enforced.

2. Several persons engaged in a partnership for the purpose of buying lands, from Indians, and re-selling them, the parties to be interested in the profits, in the proportion that they each invested their money in the purchase of land : Held, that funds arising from the re-sale of land in the hands of any of the partners, being the profits of the land re-sold, was the money of the company open to re-investment; and whilst such a fund existed, adequate to the demand, no partner could be considered in default, if his proportion of it was sufficient to meet the exigency.   Nor could a member of the firm, actively engaged in its business, be excluded from a participation in its benefits for want of funds without notice.

3. When a bill is filed by one of a partnership for the purpose of buying and selling land, for his share of profits of the land actually sold, and the other partners unite in resisting his claim, the court is not called on to settle the accounts of the other partners, the nature of the partnership being such, that upon the sale of a tract of land, each had his right to a share of the proceeds.

4. The master reported the amount of sales for cash, and on credit, and as the defendants did not show that the debts were not collected, and had been due more than two years, the presumption arises that the debts had been collected.

Error to the Chancery Court of Talladega.

THE bill was filed by the defendant in error, for the settlement of a partnership in the purchase and sale of lands. The bill particularly sets out the lands purchased, and the price at which they were sold, and alledges that the defendants refuse to settle and account with him, &c. The prayer of the bill is for an account, &c.

The defendants, by their answers, deny the contract as stated in the bill, that is, that the parties were to be equally interested in the profits, but insist that the contract was, that each party was to be interested in the profits, in proportion to the sum advanced in the purchase of the lands, and plead the statute of frauds. They admit what lands were purchased under the contract; deny that the complainant is entitled to share in the profits of certain lands, which are described, and deny that he furnished his proportion of the money necessary to make the purchases. They deny that they ever refused to permit him to participate in the profits of the lands in which he was interested, "and that they now are ready to make a full and fair settlement with him, and to account to him for every cent that may be due him," &c.

The complainant amended his bill, so as to state the contract as admitted by the answers, and leave was given to the defendants, if they considered it necessary, to answer the bill in sixty days. Subsequently a reference was made to the master, to state an account between the parties.

The master stated the account, to which many exceptions were taken, which on appeal to the chancellor, were overruled, and a decree rendered in favor of the complainant.

MORRIS, for plaintiff in error.

1. A parol agreement between partners for the purchase and sale of lands, for profit, is void under the statute of frauds. [Story on Part. § 83 ; Smith v. Burnham, 3 Sum. 435; Potts v. Waugh, 4 Mass. 424; Larkins v. Rhodes, 5 P. 195; Henly v. Brown, 1 S. 144; Henderson v. Hudson, 1 Munf. 510, and cases there cited; Lamas v. Baley, 2 Ver. 627 ; Parker v. Badley, 4 Bibb, 102.]

2. Partnership lands have never been considered personalty for the purpose of relieving an agreement from the influence of the statute of frauds—but the principle is recognized for the purpose of carrying out the intention of parties in certain cases, and not to aid in the evasion of a positive law. [1 Story's Eq. § 80.]

3. The decree below cannot be supported, because rendered upon a parol settlement of the partnership transactions. How can it be ascertained how much belongs to complainant, before a final settlement. [Cooper's Just. Dig. 45.]

4. The *agreement* requires an advance of money by Ware —he *alledges no advance* in his bill, it is of the essence of the contract—without such allegation there can be no decree. [Morgan, et al. v. Crabb, 3 P. 470 ; Bogman v. Devangham, 3 S. 343; Clements v. Kellog, 1 Ala. 330; Maurey's adm'r v. Maury's adm'r, 8 P. 211.]

5. The court below decreed profit in favor of complainant and carried such profit to make his advance, which he had not contributed under the agreement, when in fact the partnership transactions remained unsettled, and much of the land unsold. Suppose a loss on such settlement—what would be the predicament of complainant's property, taken as advance.

6. The decree is erroneous, because the answers deny the allegations on which it is predicated, (see exhibit A,) and the proof does not countervail such denial.

7. The decree covers many tracts of land, without any proof, either before the master, or on the trial, that they were included in the agreement.

8. A resulting trust cannot be decreed under the bill as now framed. [Gibson, et al. v. Carson's Adm'r. 3 Ala. Rep. 421.]

9. A resulting trust growing *out of a contract*, must be in writing—otherwise if the trust arose by operation of law. [Parker's Heirs v. Badley, 4 Bibb, 102 ; Deloney v. Hutchinson, 2 Rand. 186.]

10. As to the nature of resulting trusts. [2 Story's Com. on Eq. § 1201 ; Ib. § 1195 to 1201; 1 Lomax Dig. 212.]

CHILTON and RICE, contra.

1. The statute of frauds can only be an available objection to decreeing on a parol contract for lands, when the contract is denied by the answer, or when the statute itself is pleaded, or relied on in the answer. If the answer admits the contract, and fails to rely on the statute, the complainant need adduce no proof of the contract. [Talbot v. Bowen, 1 Marshall's Rep. 436; Barry v. Coombe, 1 Peters' Rep. 640, 648; Burnand, et al. v. Nerot, 1 Car. & Payne, 578.]

2. Part performance will take such contract out of the statute of frauds. [Cummings' Heirs v. Gill's Heirs, 6 Ala. Rep. 562; Brock, et al. v. Cook, et al. 3 Porter's Rep. 464.]

3. If the contract be void, and the money of Ware has been used by the plaintiffs in error in the purchase of lands, and the conveyances for the lands have been made to plaintiffs in error, a trust results in favor of Ware. [Davis v. McKinney, 5 Ala. Rep. 719.]

ORMOND, J.—At first we were disposed to think, that this case was within the statute of frauds, the agreement of the parties not being in writing. Upon the re-argument of the cause, the pleadings have been more particularly brought to our notice, and we are now satisfied, that the statute is not relied on by the defendant, so as to be a bar to the relief sought. · The defendants plead the statute of frauds, to any relief upon the agreement set up in the bill, and then state what they assert to be the true contract of the parties, which they are now, and always have been willing to settle by. The complainant then amended his bill, setting out the contract in the terms stated in the answers, and to this amended bill, the defendants have never filed an answer. Upon the filing of the amended bill, leave was given to the defendants to file an answer within sixty days, if they thought proper. Only one of the defendants answered, and this not for the purpose of answering the amended bill, which was in fact merely the echo of the contract as stated in the answers, but to supply an omission. Under these circumstances, we are clear in the opinion that the defendants have waived the defence arising under the statute of frauds. The defence of the statute of frauds must be pleaded, and if it is

waived, and the contract admitted or established by proof, it will be enforced. See authorities cited, 2 Story's Eq. 58, 63 in note ; 1 Fonb. Eq. 131, ch. 3, note ; Cooth v. Jackson, 6 Vesey, 17 ; Talbot v. Bowen, 1 Mar. 436.

The remaining questions arise out of the account.

The contract between the parties being, that each should be interested in the profits, in proportion to the money invested by him in the purchase of lands; the only questions necessary to be ascertained are, what amount did each invest, and what was the amount of the nett profits by the sale of the lands of the company ; and, according to these points, all the numerous exceptions converge. We shall therefore a-dopt the course pursued by the chancellor, considering the principles which must control the account, instead of considering each exception in detail.

The main controversy in the court below, was as to several tracts of land, in which, it was alledged, the complainant had no interest, because he did not, according to the terms of the agreement, advance his proportion of the purchase money. It would be a most unreasonable construction of the agreement of the parties, that when a tract of land was purchased, they were all to meet, and each advance his proportion of the purchase money. The benefit to be derived by the union of their interests, was doubtless principally, to reduce the price of the lands, by reducing the competition ; but this advantage would have been paralyzed if the parties were compelled to act in concert. It was only by separately engaging in the business, that the views of the contracting parties could be carried out. When an Indian consented to sell, those engaged in that traffic understood their business' too well to leave him at the mercy of another land jobber. Such was the practice under the contract, as it appears that the complainant paid the entire purchase money for some of the first tracts purchased.

It would follow, from the nature of this contract, and the manner in which it must necessarily have been executed, that a portion of the partners could not exclude one of their number, actively engaged in the business of the concern, from a participation in the purchase of land, for want of funds, without notice. It is not pretended that any such demand

was made, or notice given, although it appears the complainant was actively engaged in the business of the company, down to the purchase of the last tract. We agree entirely with the chancellor, that funds in the hands of any of the partners, arising from the profits of the land resold, was the money of the company, open to a reinvestment, and whilst such a fund existed, adequate to the demand, no partner could be considered in default, if his proportion of it was sufficient to meet the exigency. From this examination, it appears that the report of the master, based upon the principle here ascertained, is correct.

The lands, which it was sought to exclude the complainant from the benefit of, are distinctly stated in the bill, and the proof is very satisfactory to show, that he is entitled to share in the profits of these, as well as the rest, to which his right is not controverted.

It is also argued, that the decree is wrong, in not declaring the share of each partner in the fund. The bill is filed by one of the partners, to obtain his share of the profits of the land actually sold, in the hands of the remaining partners. If the other partners desired the chancellor to settle the accounts, as between themselves, they should have made such a case by becoming actors. Instead of which, they unite in resisting his claims, and do not profess an inability to settle among themselves. The very terms of the contract, contemplated a division as soon as a sale was made, and as the land was purchased for cash, no difficulty whatever could arise, as upon the sale of any one tract, each had a right to his share of the proceeds.

It also appears, that some of the lands were sold partly for cash, and partly on credit, and the report of the master ascertains the respective proportions; and it is now further objected, that a decree was rendered in favor of the complainant, for the entire amount, when it does not appear that the debts have been collected. The report of the master ascertains the amount of cash received, and the amount in notes; and allows two years to the parties for the collection of the latter. The defendants were called upon to disclose all the facts relating to the sale, and do not state that the money is not yet

57

collected, the sales having been made in 1835. We think, therefore, that the register was fully authorized in presuming that it was collected, and two years was amply sufficient for that purpose. If any injury has been done, it is their own fault, as they had the power of showing that the notes were not yet collected, or could not be collected, and have not done so. Their silence justifies the presumption which the master drew.

It is also supposed, that the chancellor erred in decreeing the profits of the land actually sold, to the complainant, without decreeing a sale also of the lands remaining on hand. It is a sufficient answer to this objection, that neither of the parties desired it, so far as we can judge from the pleadings. It results from the contract, that upon the sale of any one tract, each partner is entitled to his share of the product, and cannot be delayed until all the lands are sold. The apprehension of the plaintiff's counsel, that the lands on hand might be sold at a loss, and that the profits already made should be reserved as a fund to meet such a contingency, is entirely groundless. The lands having been paid for by all the partners, if they were to be struck out of existence, it could not affect the right to profits on the other lands, already sold.

It is further urged, that there is a mistake in the account, by giving the complainant a credit for $325, the purchase money of the "Bull tract," which the testimony of Miers, and R. H. Ware shows, was re-sold on the same day, and the purchase money refunded to complainant.

Our first impression was, that this objection was well taken; but upon a further examination of this complicated account, we think it sufficiently appears, no such mistake has been made. The master does, it is true, make a list of all the lands purchased, with the cost, including the "Bull tract," but this is done in obedience to the decretal order of the chancellor, to ascertain whether the complainant had advanced his share of the purchase money. In order to ascertain the profits, he afterwards puts down the tracts sold, excluding the "Bull tract," the profits of which was divided when the sale was made, (except $29,) and ascertains the account to be $6,448 77, from which he deducts the costs of the tracts so sold, and the expense paid on another tract, in all $2,418,

leaving $4,030, of which one third, with interest, belonged to the complainant. It does not therefore appear, that the error complained of has been committed.

We are not able to perceive that any error has intervened, and the decree of the chancellor must be affirmed.