# Mobile & Montgomery Railway Company v. Jay.

*Action on Common Counts, for Medical Services rendered.*

1. *Letter of railroad president; when relevant and admissible against company.*—In an action against a railroad company, for medical services rendered to one of its servants, who was injured while in its employment and service, a letter from the president of the company, addressed to the plaintiff's attorney, purporting to be a reply to a letter received from him, which is not produced, and referring to plaintiff's account, is *prima facie* irrelevant and inadmissible, when without date, and offered without any evidence identifying the account.

2. *Ratification by principal, of agent's unauthorized act.*—Where the principal has full knowledge of an unauthorized act of his agent, from which he receives a direct benefit, he must dissent, and give notice of his dissent, within a reasonable time, or his assent and ratification will be presumed; but, where he receives no direct benefit from the act, and the party dealing with the agent is not misled or prejudiced by his failure to repudiate the act promptly, and a prompt reply is not demanded by fair dealing or a usage of trade, a ratification of the act will not be presumed from his mere silence. (Limiting and qualifying first head-note in *Powell's Adm'r v. Henry*, 27 Ala. 612.)

APPEAL from the Circuit Court of Conecuh.
Tried before the Hon. JOHN K. HENRY.

[Mobile & Montgomery Railway Co. v. Jay.]

This action was brought by A. Jay against the appellant, to recover the value of services rèndered by the plaintiff, as a physician and surgeon, to one Richardson, a negro man, who was badly injured by the defendant's cars while in its service and employment, and whose leg was amputated in consequence of the injuries which he received. On the trial, as the bill of exceptions states, the plaintiff testified, as a witness for himself, that the negro man was in the defendant's employment at the time he was injured, which was in the fall of the year 1876, "and had his foot badly mashed by the cars; that one O'Brien, who was then a supervisor of the defendant's road, was present at the time of the accident, and sent for plaintiff, who was a practicing physician, and requested him to give the injured man such professional attention as was necessary,—telling plaintiff that the injured man was an old employe of the company, and they did not want him to suffer for anything; and plaintiff thereupon examined the wounded man, found that amputation was necessary, and amputated his leg, and gave him necessary medical attention for about six weeks thereafter." "Plaintiff testified, also, that he came to Montgomery, after said services were rendered, to get pay for his services; and met Col. Jordan, the superintendent of defendant's road, and asked him for pay. Jordan did not look at the bill, but said that it had been the custom of the company to pay bills of this kind, for medical services to employes of the company who had been injured by its cars; but, as this man had sued the company for damages on account of the injury, the company would not pay plaintiff's bill. Plaintiff replied to this, that O'Brien, the supervisor of the road, had employed plaintiff to attend to the injured man, and he thought the company would pay him if O'Brien employed him; and that Jordan then said, if O'Brien had employed him to attend to the man, the company would pay his bill for his services, and that he would see O'Brien about it. Plaintiff further testified, that O'Brien did not, when he so employed him, say who would pay plaintiff, but said that the injured man was an old employe of the company, and they did not want him to suffer for anything; and plaintiff knew that O'Brien was then the supervisor of defendant's road." Other witnesses for the plaintiff testified as to his employment by O'Brien; and the value of his services was proved.

The plaintiff then offered in evidence a letter which purported to have been written by Daniel Tyler, having first proved his handwriting, and that he was the president of said railroad company, "from the year 1874, until a few weeks previous to the trial." The heading of the letter was,

[Mobile & Montgomery Railway Co. v. Jay.]

"*President's Office, Mobile & Montgomery Railway Company, Montgomery, Ala.,——187—*" It was addressed "*John D. Burnett, attorney at law, Evergreen, Ala.*"; and was in these words: "Dear Sir—I have your favor of 15th inst., as to Dr. Jay's account. I know nothing of the matter, and when Col. Jordan returns here (he is expected shortly), I will refer the matter to him for explanation." The defendant objected to the introduction of this letter as evidence, " on the ground that it was illegal and irrelevant; and because it was not shown when it was written, or when received; nor was it shown, or proposed to be shown, what were the contents of the letter to which it was a reply. But the court stated, that the letter would be allowed to go to the jury for what it was worth, as it was on the same subject-matter, and over-ruled the objection, and permitted said letter to be read to the jury as evidence; to which ruling the defendant excepted."

One Correy, a witness for the plaintiff, who was also a supervisor on the defendant's road, testified, on cross-examination, "that the business of a supervisor on the road was to keep the road-bed, track, bridges and trestles in repair, and to contract for cross-ties, lumber, and other materials used in repairing the same; and that it was not within the scope of his employment or duties to employ a physician to attend to employes who were injured by the cars." He testified also, " on *re-direct* examination, that if the superintendent had authorized O'Brien to employ plaintiff, then he would have authority so to do, and that he did not know whether O'Brien had such authority from the superintendent or not." It was admitted, that Col. Jordan, if present, " would swear, that when Dr. Jay presented his bill for services to said Richardson, he did not tell Dr. Jay that, if O'Brien had employed him, the company would pay his bill; nor did he say that the company would pay it if O'Brien had promised to pay it; but he told Dr. Jay that, if O'Brien had obligated the company to pay the bill, then the company would pay it."

"This being the substance of all the evidence," the court charged the jury, among other things, as **follows**: " 1. When a party, assuming to act for another, does an act which he is not authorized to do; when the fact is brought directly to the knowledge of the principal, by the party interested in it, who demands that the promises shall be carried out, the principal is called upon to disavow the agent's authority to make the promises, or the presumption of a ratification of the promise by the principal may arise therefrom." To this charge the defendant excepted, and also to other charges which it is not necessary to notice.

The ruling of the court on the evidence, and the several charges given, are now assigned as error.

D. BUELL, for appellant, cited Wharton on Agency, § 65; 1 Amer. Lead. Cases, 5th ed., 719–20; *Powell's Adm'r v. Henry*, 27 Ala. 612; *White v. Langdon*, 30 Vermont; 1 Brickell's Digest, 337, § 22, and cases cited.

J. D. BURNETT, *contra*, cited 1st Greenl. Ev. § 283, as to the admissibility of Tyler's letter; and on the question of ratification, these authorities: *Bredin v. Dubarry*, 14 S. & R. 30; *Hastings v. Bangor House Proprietors*, 18 Maine, 436; 1 Chitty on Contracts, 212, cases cited in note 1; Story on Agency, §§ 253–56; *Blevins v. Pope*, 7 Ala. 371; *Wood v. McCain, Ib.* 800; *Reynolds v. Dothard*, 11 Ala. 531; *Cleland v. Walker, Ib.* 1058.

SOMERVILLE, J.—The letter of Daniel Tyler, president of the defendant railway company, was improperly admitted as evidence in the trial before the *nisi prius* court. It bears no date. It does not appear when it was written, nor when received. No evidence was offered to prove the contents of the letter of Burnett, to which it was a reply; nor was it proposed to make it relevant by any such extraneous evidence. Without the light of other facts, we are left in the dark as to whether or not it related to the subject-matter of this particular suit. *Prima facie*, therefore, the letter was irrelevant, and the objection to its admission should have been sustained.

The first charge given by the presiding judge to the jury does not embody an accurate exposition of the law of agency and ratification. The correct rule seems to be, that, where the principal has a full knowledge of the acts of his agent, from which he receives a direct benefit, he must dissent, and give notice of his non-concurrence, within a reasonable time, or his assent and ratification will be presumed.—*Brigham v. Peters*, 1 Gray (Mass.), 147.

The first head-note in the case of *Powell's Adm'r v. Henry*, 27 Ala. 612, which holds, that, "if an agent exceeds his authority, although the principal may ratify the act; yet, to avoid it, he is not obliged to give notice that he repudiates it," is too comprehensive in its statement of the law. It is true that mere knowledge, on the part of the principal, of an agent's unauthorized action, will not make silence, or non-interference, in all cases amount to ratification. But it would, in those cases where the party dealing with the agent is misled or prejudiced (*Smith v. Sheeley*, 12 Wall. 358); or where

the usage of trade requires, or fair dealing demands, a prompt reply from the principal.—Wharton in Agency, § 86. In all such cases, the principal, if dissatisfied with the act of the agent, and fully informed of what has been done, must express his dissatisfaction within a reasonable time. 2 Greenl. Ev. § 66.

The railway company received no direct benefit from the medical services rendered by Dr. Jay to one of its employes. The charge in question does not conform to the above principles, and the exception to it must be sustained.

It is unnecessary to consider the other points raised by the record.

Reversed and remanded.