# Clark *v*. Taylor & Co.

*Action on Common Counts, for Goods Sold and Delivered.*

1. *Partner's authority to bind partnership.*—It is a general rule of law, that each partner is the agent of the firm, as to all transactions coming within the scope of the partnership business, the extent of his general authority in each case being determined by the nature of the particular business in which the partnership is engaged, and its ordinary usages; and while this general authority may be limited, by special agreement between the partners, such limitation can not affect the rights of third persons dealing with one partner in ignorance of it.

2. *Same.*—If one partner borrows money, or buys goods, solely on his individual credit, the creditor can not maintain an action against the partnership, merely because the money or goods were applied to its uses; but the question in such case is, to whom was the credit given,—which is a question of fact for the determination of the jury under all the circumstances of the case; and although the goods were charged on the creditor's books to the partner purchasing them, this is not conclusive evidence that the credit was given exclusively to him, and it may be shown that they came to the use and possession of the partnership.

3. *Contracts of agent; when binding on principal.*—A person dealing with an agent is bound, at his peril, to ascertain the extent of the agent's real authority; yet the agent's authority may be inferred from his previous employment in similar transactions known to the party dealing

with him, or from the principal's subsequent acquiescence deliberately made with knowledge of the facts; and when a direct benefit accrues to the principal from the unauthorized act, his failure to express his dissent may amount to a ratification.

4. *Set-off of partner's debt against debt due partnership.*—In an action by a partnership on a debt due to it, a debt due from one of the partners individually to the defendant is not available as a set-off; "but it would be otherwise, where a usage of the firm to the contrary is proved, establishing a clear and uniform practice to allow such set-off, or where the consent of all the partners is satisfactorily shown."

5. *General objection to evidence partly admissible.*—When an account is offered in evidence under the plea of set-off, and some of the items contained in it are admissible under that plea, a general objection to the whole account may be overruled.

6. *Declarations of partner; when admissible against co-partner, or partnership.*—The declaration of one partner, not made in the presence of his co-partner, is not competent evidence to prove the existence of the partnership between them; but, the fact of partnership having been otherwise proved, the declaration of one partner, when opening an account for goods bought, that he was authorized by his co-partner to open it in his own name, is admissible evidence as a part of the *res gestæ*, explaining why the goods were charged to him, and tending to show that the credit was not given exclusively to him.

7. *Statute of frauds as to promise to pay debt of another; how pleaded, or taken advantage of.*—The statute of frauds as a defense, unless specially pleaded, is generally considered as waived; and when an account against a third person is offered in evidence under the plea of set-off, in connection with proof of the plaintiff's promise to pay it, the statute of frauds not being specially replied, the evidence can not be rejected because the promise was merely verbal.

8. *Specific objection to evidence.*—An objection to the admission of evidence, on a single specified ground, is a waiver of all other grounds of objection.

9. *Ratification or disavowal of agent's act.*—A person can not disavow or ratify an act or transaction of which he has no knowledge; and when it is proposed to hold the principal liable for the unauthorized act of his agent, on the ground that he did not disavow it, it must be shown that he had knowledge of it.

10. *Presumption of injury from error.*—When error is shown, injury will be presumed, unless the contrary clearly appears from the whole record.

APPEAL from the Circuit Court of Choctaw.

Tried before the Hon. LUTHER R. SMITH.

This action was brought by Willis G. Clark, against the partners composing the firm of S. T. Taylor & Co., and was commenced on the 26th March, 1878. The action was founded on an account for goods sold and delivered to the defendants, during the years 1876 and 1877, by the firm of W. F. Winslett & Co., which was composed of the plaintiff and said W. F. Winslett; and the plaintiff sued as the successor and assignee of the partnership. The complaint contained the common counts for goods sold and delivered, on an account stated, &c.; and there was a special plea of set-off, on which issue was joined. There seems to have been no controversy

as to the correctness of the account sued on, the entire contest being limited to the account offered in evidence under the plea of set-off, which largely exceeded the plaintiff's demand. It appeared that the firm of W. F. Winslett & Co. "was engaged in the saw-mill, ginning, and grist business, at Isney, in Choctaw county, and the defendants are general merchants at that place, having been engaged in business there since 1873." The plaintiff resided near Mobile, and owned a plantation in the neighborhood of Isney. The partnership of Winslett & Co. was founded in 1873, and continued until about the close of the year 1876, when Clark bought out the interest of his co-partner; and Winslett was also employed by Clark, during a part of that time, as agent to superintend his farm. The account offered in evidence by the defendants was made out against W. F. Winslett individually, and consisted of items for goods furnished to him, or on his orders, during the years 1876 and 1877, amounting to about $998; and there was also a small account against the plaintiff individually, for goods sold and delivered in December, 1877, amounting to about $61.

John S. Turner, one of the defendants, being introduced as a witness by the plaintiff, and being shown the account sued on, thus testified: "Many of the items were received by the defendants from W. F. Winslett, and were credited on their books to his account. Defendants had but one account on their books, in reference to these transactions for 1876–7, until notified by plaintiff in December, 1877, except that they had separate accounts against the hands employed at the mill and on the plaintiff's plantation. Defendants' books and accounts were made out in the name of W. F. Winslett, who told witness that plaintiff was a member of the firm of W. F. Winslett & Co., and that he was plaintiff's general agent to superintend his farm in the neighborhood of Isney. Plaintiff, or W. F. Winslett & Co., had a small supply store on said farm, to furnish mill and farm hands. Defendants had frequent transactions with Winslett, but had never spoken to plaintiff on the matter of Winslett's account, until the fall of 1877." The bill of exceptions here states, "The defendants then offered in evidence, under their plea of set-off, the following accounts," marked "Exhibit B," and "Exhibit C;" the former being the account made out against Clark, and the latter the account against Winslett. "The plaintiff objected to the introduction of *Exhibit C*, but the court overruled the objection (to which the plaintiff then and there excepted), upon counsel stating that he would show, by previous accounts for a number of years, that plaintiff had recognized and ratified accounts made out in this way; and these were admitted

with this understanding." The witness further testified, that these accounts were correct copies from the defendants' books; and he was then asked, "Did Winslett say, when he opened his accounts with defendants, that he was authorized by plaintiff to open the account in the name of W. F. Winslett?" The plaintiff objected to this question, and reserved an exception to the overruling of his objection; and the witness then answered, "that Winslett made such representations, but plaintiff was not present, nor did Winslett then or since show defendants any written authority to that effect."

The witness further testified : "Defendants books were kept in the same way, from 1873 to 1877, except in 1875, when plaintiff made a special agreement with them to furnish the hands of the mill and farm ; and defendants filled Winslett's orders for 1875, but charged them on their books to plaintiff individually, as shown by the accounts," which he produced. "Plaintiff paid the account for 1875, as shown by his receipt. Defendants never presented to him the account of Winslett, 'Exhibit C,' nor any similar account for the preceding years, at any time during these transactions. Plaintiff never assented in person, in the presence of witness, to the credits placed on said account by defendants." The witness was then asked, by the defendants' counsel, "Did plaintiff ever disavow, or make any objection to such ?" The plaintiff objected to this question, and reserved an exception to the overruling of his objection ; and the witness answered, "that plaintiff had not until the fall of 1877." The witness further testified : "Defendants had accounts with several of the employees of Winslett & Co., and also with the farm hands of plaintiff ; and plaintiff paid their accounts to defendants, as shown by the following receipt," being a receipt dated Nov. 1, 1877, for accounts against six named persons, aggregating $257.47, signed by defendants. "Defendants rendered the accounts to Winslett, every year from 1873, all made out the same way, and they were settled, but witness did not know whether Winslett showed them to plaintiff. The arrangement between Clark and Winslett, as to farm hands, for the year 1877, was, that the farm was let out to the hands for a share of the crop, and Winslett and Clark were also to share the crop made by Winslett ; and this arrangement was made known to defendants as to the farm." (The witness then testified to the arrangement between the plaintiff and the defendants for the year 1877, by which the former waived his landlord's lien on the tenants' crops, and the defendants made advances to them, taking a crop-lien note; and under this arrangement the plaintiff paid the tenants' accounts for that year, as above stated, and also delivered to defendants, under

[Clark v. Taylor & Co.]

the written order of Winslett, four bales of cotton, as his share of the crop.) "Defendants credited the proceeds of said four bales of cotton on Winslett's account, contracted after plaintiff had notified them that he would not be responsible for said Winslett's purchases. Defendants never would have made this account with Winslett, nor given him such credit, if he had not been known to be a member of the firm of W. F. Winslett & Co.,and an agent of plaintiff."

"Defendants offered to introduce the account of one Jack Lewis, a tenant of plaintiff; to which plaintiff objected, on the ground that said account was not contained in the bill of particulars required of the defendants before the trial of the cause, when the plea of set-off was filed. The court overruled the objection, and allowed the account to come in. This item was admitted, on the ground that plaintiff had been shown this item before suit, and agreed to pay it; because plaintiff called for defendants' books, and this item was in the books. Defendants also asked and obtained leave to amend their plea of set-off, and plaintiff's counsel then and there excepted. Defendants then asked the following questions : 'Did plaintiff give defendants any notice of the change which was made between himself and Winslett, in regard to running the mill and farm in 1876?' 'Did plaintiff ever ask to see defendants' books?' 'Did plaintiff ever object, or give notice to defendants that he would not be bound for the contracts of Winslett?'. To each of these questions plaintiff objected; the court overruled the objections, and plaintiff excepted. The witness answered, that plaintiff had not."

The plaintiff himself thus testified in his own behalf : "In 1873, I entered into a partnership with W. F. Winslett, in the saw and grist-mill and cotton-ginning business at Isney, and employed said Winslett to superintend my farm. He was not my general agent, and his powers in the partnership *was* simply that of other partners in similar business. In 1875, I made arrangements with the merchants at Isney (defendants and P. C. Rondet) to furnish supplies, &c., to the farm and mill employees, and required defendants to furnish me monthly statements of their accounts. The statements were rendered, and accounts made out in my name, as shown by exhibit to Turner's evidence. I paid up these accounts in the fall of 1875, but did not then, nor at any time, pay anything to defendants for said Winslett, except by special order from him for his share of the crop of 1877, as shown by receipt exhibited by Turner. I did not know, except incidentally in the yearly settlements between Winslett and myself of partnership and plantation matters, that he had any account with defendants. I furnished from Mobile, except during the year

[Clark v. Taylor & Co.]

1877 and a part of 1875, such supplies for mill and plantation as were needed. Winslett would write to me for such articles as were needed, and I would forward them. I did not inquire into Winslett's private accounts, and did not authorize the proceeds of the mill or farm [?] to any account made with defendants. In 1875 and 1877, I made special arrangements with defendants. I had no knowledge of any claim of defendants against me except for these years, which I paid. Towards the end of 1875, finding the defendants' accounts against the mill and hands growing too large, I ordered them stopped, and afterwards furnished from Mobile such supplies as were needed. I made no accounts with defendants in 1876, and had none presented to me. A change was made with Winslett and myself in 1876. I bought out his interest in the profits of the partnership for that year in the mill, &c., and paid him a salary for attending to the business and the farm ; but I do not know that this arrangement was told to defendants. In June, 1877, I made arrangements with defendants, by letter to Winslett, to advance supplies to the hands. The tenant system was adopted on the farm that year, and I authorized Winslett to give guaranty for advances to tenants, waiving my lien, provided the amount advanced to each did not exceed $7.50 per month, and that I should have the option to pay up the advances and take the crop. I did this when the crop came in, as shown by receipts produced by Turner. The first that I knew of the application by Winslett of the assets of the firm and proceeds of the farm to his indebtedness to defendants was in the fall of 1877, and I at once repudiated it as to Winslett." The witness was here asked, by defendants, these questions: "Did you give notice to defendants that you would not be bound for Winslett's debts ?" " Did you ever disavow, or make any objection to the credits given by defendants to Winslett ?" " Did you ever ask to see defendants' books ?" To each of these questions plaintiff objected, and excepted to the overruling of his objections. The witness answered, "that he had not."

W. F. Winslett, being introduced as a witness by the defendants, thus testified : " Witness was a member of the firm of Winslett & Co., but had no special powers in the partnership ; was the manager of the business of the firm, but had no greater powers than his co-partner ; and was also plaintiff's agent to attend to his farm near Isney. Witness told defendants of the partnership, and of his agency. Kept the books of the firm for several years. The arrangement between witness and plaintiff in 1876 was as stated by plaintiff. Witness gave accounts and filled orders for defendants, which

[Clark v. Taylor & Co.]

were credited, he supposed, on defendants' books.   He considered that he had authority to do so as partner.   Bought many articles from defendants on his individual account; can't say exactly how much of said account went to his individual benefit, but supposed $175 to $200 per year.   Plaintiff and witness had settlements every year, and plaintiff allowed credits for such things as witness got from defendants for mill and farm.   Can't say that plaintiff ever saw statement in full of defendants' accounts.   Plaintiff knew nothing about witness' private business, except incidentally. The items composing defendants' account against W. F. Winslett were for himself and family, and for the mill and farm hands generally.   The mill hands would sometimes work on the farm.   Defendants did not know who the mill hands were, nor who the farm hands were, nor when they worked on either the mill or the farm.   Witness paid a great many of the expenses of the mill by orders on defendants, and has been doing so since 1873, on accounts made out by them to W. F. Winslett.   Witness and plaintiff settled every year, and plaintiff knew that hands had been paid by orders on defendants' store.   Witness had settlement with plaintiff every year, and he never made any objection to the manner in which defendants' accounts were made out."

P. C. Rondet, another merchant at Isney, who was introduced as a witness by defendants, testified, among other things, " that he made a special agreement with plaintiff in 1875 to furnish the mill and farm hands with supplies ; that the orders were given by Winslett, but his accounts and books for that year were made out against plaintiff individually, and were paid by him when presented ; and that plaintiff promised to pay him Winslett's individual account for 1875. Plaintiff objected to any evidence of a promise by him to pay the account charged to Winslett, unless such promise was made in writing ; which objection the court overruled, and plaintiff then and there excepted."

" This was all the evidence in the cause.   After the testimony was closed, plaintiff moved to exclude the account of W. F. Winslett with defendants, and all the testimony relating thereto.   The court overruled the motion, and plaintiff took a non-suit with a bill of exceptions."

The several rulings of the court to which, as above shown exceptions were reserved, are now assigned as error.

TAYLOR & GLOVER, for appellant.

THOS. W. COLEMAN, contra.

SOMERVILLE, J.—It is a general rule of law relating to partnerships, that each partner is the agent of the firm, as to all transactions coming within the scope of the partnership business. This general authority is to be tested by the nature of the particular business to which the partnership relates, and its ordinary usages.—1 Collier Part. § 412, p. 648. As between the partners themselves, this authority may be limited or controlled by special agreement; but, as to third persons, having no notice of such limitation, the partnership would be bound by the exercise of such general authority by any one member of the firm.—5 Wait's Act. & Def. p. 106. We think that Winslett, *prima facie*, had a lawful right to bind the firm of Winslett & Co., of which Clark is shown to have been a member, for any necessary provisions or supplies furnished to carry on the partnership business, which business included the operation of a saw-mill, a gin, and a grist-mill.—*Johnston v. Dutton*, 27 Ala. 245, 251; *Smitha v. Cureton*, 31 Ala. 652; *McCrary v. Slaughter*, 58 Ala. 230.

If one partner borrows money, or purchases merchandise, upon his own individual credit, and afterwards applies such goods or money to the uses of the partnership, the creditor can not, for this reason, have an action against the firm. Story on Part. § 135; Parsons on Part. p. 105, *note (F)*. But this principle applies only to those cases where the credit was given exclusively to the partner making the purchase, and it was not intended that the other members of the firm should be looked to for payment.—*Smith v. Durrett*, 2 Amer. Dec. 714. And it has been accordingly held, that even where there is a written contract in the name of one partner, evidence *aliunde* may be received, to prove that it was a partnership, and not an individual obligation.—*Snead v. Barringer & Rhodes*, 1 Stew. 134. And again, where goods were charged on the books to one partner, parol evidence was held admissible, to show that they came to the use and possession of the firm.—*Richardson v. Humphreys*, Minor, 383; *Lamb v. Brolaski*, 38 Mo. 51. The question is simply, to whom was the credit given; and this is one of fact, to be determined by the jury, under all the circumstances of the case.—*Webster v. Stearns*, 44 N. H. 498.

These principles have application in this case only to those articles purchased by Winslett for the firm of Winslett & Co., necessary for conducting the mill, ginning, and grist business. But the partnership of Winslett & Co., of which the appellant, Clark, was a member, would not be responsible for such goods as were purchased by Winslett for his own personal use and that of his family; and which were in no wise connected with the partnership business. As to these

items, it could not have been intended that the other partner, Clark, should be looked to for payment; and they were, moreover, charged on the books of Taylor & Co., to Winslett alone.—*Elder v. How,* 38 Ill. 538; *Smith v. Durrett,* 2 Amer. Dec. 714.

There are shown to be still other items in the account due Taylor & Co., which were purchased for and used in running the farm of Clark. Winslett was not a partner in this business, but was a mere agent of Clark, and his authority to make such purchases is denied. The law is well settled, that an agent, like a partner, can bind his principal only so long as he acts within the scope of his authority. But one who deals with a mere agent is bound, at his peril, to know the extent of his *real* authority, while, in dealing with a partner, he may trust to the *apparent* scope of his authority as tested by the nature of the business and its usages.—1 Collier Part. § 412, p. 648. Yet the authority of an agent may be inferred from his previous employment in similar transactions known to the party with whom he contracts or deals; or it may be shown from subsequent acquiescence of the principal, deliberately made with such knowledge of the facts as to constitute a ratification.—*Fisher v. Campbell,* 9 Port. 210; 1 Brick. Dig. p. 59, § 98. Where, however, a direct benefit is received from an unauthorized act of the agent, a failure of the principal to dissent may be construed into a ratification.—*Mobile and Montgomery R. R. Co. v. Jay,* 65 Ala. 113. *Prima facie,* Winslett had no authority to bind Clark for farm or plantation supplies, and the burden of proof was on the appellees, Taylor & Co., to establish such authority.—*Fisher v. Campbell, supra.*

It is objected that this account, contracted by Winslett in his own name, was allowed to be introduced as a set-off against the plaintiff in this action. The plaintiff sues as the assignee of Winslett & Co., being himself also a member of this firm. The rule is, that, in an action by a partnership, the individual debt of a member of the partnership, due by him to the defendant, is not a legal set-off.—*Evans v. Sims,* 37 Ala. 310; *Ross v. Pearson,* 21 Ala. 473; Water. Set-Off, § 213. But it would be otherwise, where a usage of the firm to the contrary is proved, establishing a clear and uniform practice to allow such sets-off; or where the consent of all the partners is satisfactorily shown.—*Hood v. Riley,* 15 N. J. (Law) 127; Water. Set-Off, § 214. If the objection had been confined to that portion of the account for which Winslett seems alone to be liable, it should have been sustained. But, in as much as there was evidence tending to show Clark's

liability for a part of it, the objection was properly overruled. 7 Wait's Act. & Def. 494, § 16.

The declaration made by Winslett, at the time he opened the account with Taylor & Co., that he was *authorized by his partner,* Clark, to open it *in his own name,* was properly admitted. It was cotemporaneous with the transaction, and tended to explain it, thus constituting a part of the *res gestœ.* It was very pertinent to show the important fact, that the parties may not have intended to give the exclusive credit to Winslett, and to explain why the merchandise was charged to him on appellees' books. This declaration was not competent to prove the existence of the partnership, unless made in the presence of the other partner.—*Cross v. Langley,* 50 Ala. 8. But the fact of the partnership being first proved, as it was by Winslett, the declaration was good also as an admission against the other partner, as to any matter within the scope of the partnership business.—*Rhodes v. Lowry,* 54 Ala. 4.

We cannot see that the court erred in admitting in evidence the account against Jack Lewis, a tenant of plaintiff. This item was shown to the plaintiff before the suit was brought, and he verbally agreed to pay it. The objection that the promise was not in writing, was not a valid one to its introduction in evidence. If the plaintiff desired to avoid its payment, he should have done so by setting up the statute of frauds in his replication. Unless specially pleaded, this defense is generally considered as waived.—*Patterson v. Ware,* 10 Ala. 444; 7 Wait's Act. & Def. p. 2, § 1.

The fact that plaintiff promised to pay a private account of Winslett, due by him to one Roudet, was irrelevant, and should have been excluded, if objected to on this account. But the objection interposed, that the promise was not in writing, was insufficient, and was a waiver of all other grounds not specified.

The question put to the witness Turner, as to whether the plaintiff ever *disavowed, or made objection* to the crediting of Winslett's account on defendants' books, was improper, and should have been excluded, in view of the fact that there was no evidence showing that he knew of such credit at the time to which the question relates, nor was there any proposal, at the time of its introduction, to so connect it. One cannot disown or ratify a transaction, of which he is shown to have no knowledge. The question assumed that some evidence was before the jury tending to prove such knowledge. Without such predicate, the question was irrelevant and foreign, and the answer tended to mislead the jury.—*Hewitt v. Clark,*

[Seaman v. Nolen.]

91 Ill. 605. Where error is shown, we must presume injury, unless the contrary clearly appears from the whole record.

There are some other exceptions to evidence, which we need not discuss in detail. We have examined them, and do not think they are well taken.

The judgment of the Circuit Court is reversed, and the cause is remanded.