# Ala. Great Southern Railroad Co. *v.* Roebuck.

*Action against Railroad Company, for Injuries to Stock.*

1. *Proof of presentation of claim to railroad agent.*—In an action against a railroad company, to recover damages for injuries to stock (Code, § 1711), it being proved that plaintiff's claim was presented, within six months after the injury, to an agent of the company, who promised to forward it to the proper officer or department, and afterwards told plaintiff that he had forwarded it, and that he would pay it on his return trip; and the evidence showing, also, that other similar claims had been presented to said agent, and had been paid by him, and that he held himself out as the agent to whom such claims could properly be presented; this is sufficient evidence of due presentation to authorize the submission of the question to the jury, although the defendant's evidence tended to show that said agent had no authority to receive the presentation of claims, but was only authorized to adjust and pay claims referred to him by the higher officers of the company.

2. *Charge as to presentation of claim, invading province of jury.*— A charge which asserts that, if plaintiff's claim was presented in writing, within six months after it accrued, to a named agent of the railroad company, "who was on the defendant's train, and was often known to settle such claims," &c., the words quoted not being stated hypothetically, is an invasion of the province of the jury.

3. *Liability of railroad company for injuries to stock; general charge on evidence.*—The engineer in charge of the train being the only witness who testified as to the circumstances attending the killing of plaintiff's horse, and his testimony negativing all negligence on the part of the railroad company and its servants; his testimony, not being impeached or contradicted, justifies a general charge in favor of the defendant.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. S. H. SPROTT.

This action was brought by James Roebuck against the appellant, a domestic corporation, to recover damages for injuries to two horses, which were run over by a train of cars on the defendant's road, about daylight on the morning of April 16th, 1882, one being killed, and the other injured; and was commenced on the 30th October, 1882. The cause was tried on issue joined, but the record does not show what pleas were filed. On the trial, as the bill of exceptions shows, the plaintiff testified in his own behalf, as to the value of his horses and the amount of injuries sustained, "but that he knew nothing of the circumstances of the killing, as he didn't see it." The plaintiff testified, also, "that he had never made any demand in writing, for damages to said stock, to the president, treasurer, superintendent, or any depot agent of the defendant, but

did make a claim in writing to a man named Smith, whom he saw on one of the defendant's trains, and who, as he had heard, paid for damages to stock for the company; that said Smith had charge of the defendant's supply train, and held himself out as the agent to whom claims for damages to stock were to be presented; that said Smith told him he could not then pay him, but that he would do so the next time he came around; that he did not know anything about Smith's authority to receive the presentation of such claims, except of having heard of his paying for such damages for the defendant; that Smith took the claim, and said that he would forward it to headquarters, and would pay it when he came around again. Other witnesses for plaintiff testified, that said Smith who run on the supply train, known as 'Gov. Smith,' had received presentation of claims for damages to stock, and paid the same; but none of them knew of his having authority from the defendant to do so, or that any of the officers of the company knew of his having done so, but that he held himself out as the agent for receiving and paying such claims, and had received and paid other like claims for the defendant. One of the witnesses, a former attorney of the defendant, stated, that he was acquainted with the course of the defendant's business, in regard to damages to stock, and that said Smith only had authority from the defendant to adjust and pay claims therefor after the same had been referred to him by the superior officers of the company for settlement; and that he never knew of said Smith having authority from the defendant to receive the presentation of such claims. No testimony was offered, tending to show that plaintiff's claim was ever mentioned, presented, or forwarded by said Smith, to the president, superintendent, treasurer, or any depot agent of the defendant, or that said claim was in any way brought to the knowledge of any of them, before this suit was brought, except as above stated."

"Some witnesses for the plaintiff stated, that they saw the defendant's train, at or near the time when and where the plaintiff's horse was killed, and heard no whistle blow for stock, which, had one been blown, they thought they would have heard. This was all the evidence offered by the plaintiff; and the defendant then introduced H. W. Lynch as a witness," who was the engineer in charge of the train at the time the horses were injured, and who testified, in substance, that the accident occurred at or near daybreak, when the train was running at the rate of twelve or fifteen miles per hour; that the horse killed was lying down on the track, and was not perceived by him until too late to reverse his engine, or stop the train; and that he used all the means known to skillful engineers to check

his train and avoid the injury. "This was all the evidence offered by the defendant."

"The court charged the jury, among other things, that if the plaintiff presented his claim, in writing, for the damage done to his stock, within six months after it was done, to the 'Gov. Smith' mentioned by the witness, who was on the train of the defendant, and was often known to settle such claims, and said Smith told him that he could not then settle the claim, but would take and forward it to headquarters, and afterwards told plaintiff that he had forwarded it to headquarters, and would pay it soon ; and if they believed that said Smith did so forward said claim to headquarters, before the expiration of six months from the time of the damage, and said claim was received at headquarters by the officers of the company ; this would be a good presentation of the claim, and the plaintiff need not prove presentation to any one else."

The defendant excepted to this charge, and then requested the following charges, which were in writing : 1. "If the jury believe the evidence, they must find for the defendant." 2. "Inasmuch as the plaintiff's claim was not presented, in writing, to the president, treasurer, superintendent, or some depot agent of the defendant, within six months after the injury complained of, and this suit was not brought within six months after said injury, the jury must find for the defendant." The court refused each of these charges, and the defendant excepted to their refusal.

The charge given, and the refusal of the charges asked, are now assigned as error.

SAMUEL F. RICE, for the appellant, cited *Railroad Co. v. Killian*, 69 Ala. 277 ; *Lehman, Durr & Co. v. Warren & Burch*, 53 Ala. 535.

STONE, C. J.—The testimony of plaintiff, in the court below, tends to show that, in less than six months after the injury was done, he made out his claim in writing, and presented it to one Smith, who was known as "Governor Smith ;" that Smith received it, and promised to forward it to headquarters ; that he, Smith, subsequently told witness he had forwarded the said claim to headquarters, and that he would, on his next trip, pay plaintiff for the horse the train had killed. There was testimony tending to show that Smith had charge of the railroad's supply-train ; that he held himself out as the agent of the road, to whom claims for damage to stock should be presented ; and that he had received presentation of claims for damage to stock, and had paid the same. There was testimony, on the other hand, tending to prove that Smith had no

authority to receive presentation of claims, but that his only authority was to adjust and pay claims which were referred to him by higher officers of the railroad company. If the version of the plaintiff and his witnesses be the true one, then this was sufficient evidence to be left to the jury, whether or not there had been a presentation in writing made to the railroad within six months after the injury was done.—*S. & N. R. R. Co. v. Brown*, 53 Ala. 651; *E. T., Va. & Ga. R. R. Co. v. Bayliss*, 74 Ala. 150. The second charge asked by defendant was properly refused.

That portion of the affirmative charge which was excepted to, has this language: "If the plaintiff presented his claim, in writing, for the damage done to his stock, within six months after it was done, to the 'Gov. Smith' mentioned by the witness, *who was on the train of defendant, and was often known to settle such claims*," &c. The italics are our own, and are simply intended to call attention to that part of the charge. The words italicised are not stated as hypothesis, nor was the inquiry of their truth submitted to the jury. A charge given in this form, where the testimony is oral, and only tends to prove the facts, can not be sustained.—*McDougald v. Rutherford*, 30 Ala. 253; *Jones v. Fort*, 36 Ala. 449; *Ross v. The State*, 74 Ala. 532.

The only witness who spoke of the circumstances attending the killing of the horse, was the engineer in charge of the train. If his testimony be true, there was no negligence on the part of the railroad company, or its employees. If there was not other testimony bearing on this question, the general charge—the one first asked by defendant—ought to have been given.—*Ala. Gt. So. R. R. Co. v. McAlpine*, 75 Ala. 113. There was testimony, however, tending to show that Smith was the agent of the company for the adjustment of claims of this class, and that he admitted its justness, by promising to pay it. This was the testimony of the plaintiff, and it does not appear to have been contradicted. Whether contradicted or not, it justified the refusal to give the first charge asked.

Reversed and remanded.