# Alabama Fertilizer Co. *v.* Reynolds & Lee.

*Action on Promissory Notes, by Payee against Maker.*

1. *Testimony of witness or party, as to motive or intent.*—The motive or intent with which an act is done, or refused to be done, is an inferential fact, to which a witness can not testify, for want of the requisite knowledge; and the principle is, with us, extended to a party testifying as a witness for himself, because such testimony is not susceptible of contradiction.

2. *What constitutes partnership inter sese, and as to third persons.* Where two persons are associated together in the sale of commercial fertilizers on commission, but the only interest one of them has in the business is the right to have such quantities as he may desire for his own use at a discount of the commissions from the selling price, this does not make them partners as between themselves; but, if they hold themselves out to the public as partners, they are liable as such to third persons dealing with them in ignorance of the real facts.

3. *Authority of partner to bind partnership.*—Each partner is the agent of the partnership, as to all contracts and transactions within the scope of the partnership business, as tested by the nature of the particular business and its ordinary usages.

4. *Same; purchases on credit.*—When persons are engaged in the sale of merchandise as a business, purchases to keep up their stock are appropriate and necessary to the business, and such purchases are, as matter of common knowledge, made on credit, longer or shorter according to the usages of the particular business; and when a partnership is so engaged, each partner has the right to bind the other by such purchases on credit.

5. *Same; same.*—In the case of commission-merchants, engaged only in the business of selling on commission for others, purchases on their own account being outside of the scope of that business, one partner can not bind the other by a purchase on credit in the partnership name.

6. *Character of partnership business; how determined.*—Whether partners are engaged in business as merchants on their own account, or are selling on commission for others, is a question of fact, and is to be determined, not by any private agreement between themselves, but by the nature of the business actually done by them with the public.

7. *Estoppel against denial of partnership.*—When a partnership has been engaged for two years, under the management of the active partner, in buying and selling on their own account, it is too late for the other partner to allege that their legitimate business was confined to selling on commission, and that the purchases were made without his knowledge or consent.

32

[Ala. Fertilizer Co. v. Reynolds & Lee.]

8. *Charge misleading jury.*—A charge which calls on the jury to institute a comparison between the probative force of the testimony of different witnesses, equally credible, and having equal means of knowledge, is calculated to confuse and mislead them, and should never be given; but the giving of such a charge is not a reversible error.

9. *Charges as to burden of proof.*—It is the duty of the court to determine, and to instruct the jury if necessary, on whom rests the burden of proof as to any material issue; and a charge which submits that question to the jury, or which places the burden of proof on the wrong party, is a reversible error.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. HENRY D. CLAYTON.

This action was brought by the appellant, a domestic private corporation, against John A. Reynolds and R. M. Lee, as partners doing business under the firm name of Reynolds & Lee; was founded on three promissory notes signed in said partnership name, each for $2,705.67, dated May 1st, 1884, and payable to the order of the plaintiff, at the First National Bank of Montgomery, on the 15th October, November and December, respectively; and was commenced on the 31st March, 1885. The defendants jointly pleaded the general issue, and Reynolds filed a special plea of *non est factum*, verified by affidavit, averring that the note was not signed by him, nor by any one who was authorized to bind him; and the cause was tried on issue joined on these pleas.

On the trial, as appears from the bill of exceptions, it was proved on the part of the defendants, by their own testimony, that Reynolds, who was a planter, and resided in the county about seventeen miles from Clayton, engaged in the business of selling guano on commission in Clayton during the year 1880, and in 1881 associated Lee with him in the business, Lee being his son-in-law, under the firm name of Reynolds & Lee; that the business was to be done "upon consignment alone;" that Lee was to manage and control the business, pay all expenses and all losses, and receive all the profits, except that Reynolds was to have all the guano he needed for use on his plantation, without paying the commissions charged by the firm for selling. Under this arrangement the business was carried on for some time, and on the 17th November, 1882, a written contract was entered into between plaintiff, a private corporation engaged in the manufacture of commercial fertilizers in the city of Montgomery, and said Reynolds & Lee as a partnership; consignments and sales were made, and notes for the agreed price were executed by Lee in the name of Reynolds & Lee; sales were made by them to customers, notes for the agreed price taken in the firm name, collections and remittances made; and this continued until the notes were given on which this action was founded. But Reynolds and Lee each testified,

that Reynolds had no knowledge of these various transactions. J. R. Rogers, the president of the plaintiff corporation, testified that, "in the winter of 1884–5, Lee applied to plaintiff to purchase guano for sale during the year 1884–5 on his own account, saying that Reynolds declined to become bound with him any more, and that he (witness) refused." This testimony was ruled out by the court, on motion of the defendants, "because the same was irrelevant and immaterial;" and plaintiff excepted to its exclusion. Said Rogers testified, also, "that said Lee, when negotiating the purchase under the contract of January 1st, 1884, stated to him (witness) that Reynolds was his partner, and was abundantly solvent; and that the sale was made on the strength of Reynolds' name as a partner." The defendants objected to this last statement of the witness, and duly excepted to the overruling of their objection.

C. P. Storrs, plaintiff's agent for the sale of fertilizers, testified that, in October, 1882, before the first sale by plaintiff to Reynolds & Lee, he went to Clayton on plaintiff's business, met Reynolds on the cars, and had a conversation with him, in which Reynolds stated "that he allowed Lee to use his name in the guano business;" that he thereupon made inquiries as to the solvency of Reynolds, and afterwards sold the guano to the firm on the faith of his solvency and credit; "and that he would not have sold the guano except upon the strength of Reynolds' name." The defendants objected to this last statement by the witness, and duly excepted to the overruling of their objection.

At the request of the defendants, in writing, the court gave the following (with other) charges to the jury:

"3. If the contract, under which Reynolds and Lee were associated in business, provided that the business to be carried on was to be an agency on commission only, then neither of them had authority to buy guano upon a joint account, without the consent of the other; although there may have been, under their contract, a partnership between them."

"6. The mere fact, if such fact is in evidence, that Reynolds permitted his name to be held out to the public as a partner of Lee in the business, the scope of which was the handling of guano upon consignment, was not such a holding out as justified the belief that he was a partner who would be bound for guano purchased by Lee on joint account."

"8. If the jury find, under the rules given them in the general charge on this point, that the testimony of Reynolds is entitled to equal credit with that of Storrs, then the testimony of Storrs is not to be taken by the jury over that of Reynolds, in matters where they conflict, if in fact they do conflict; and if such conflict is about material matters, and the burden of

establishing them is upon the plaintiff, and the testimony of Storrs and Reynolds is all the testimony upon such disputed matters, then the jury will find that such matters are not established.    Likewise, if the testimony of Lee is equal in weight to that of Rogers, then the testimony of Rogers is not to be taken over that of Lee, in matters about which they conflict, if in fact they do conflict; and if they conflict in material matters, the burden of establishing which is upon the plaintiff, and the testimony of Lee and Rogers is all the testimony upon such disputed matters, then the jury will find that such disputed matters are not established."

"10.   The burden of proving Reynolds' liability in this action is upon the plaintiff, in every aspect in which the case is presented.   The degree of proof required by law, in actions of this character, is to the reasonable satisfaction of the jury; and if plaintiff's proof falls short of this, then plaintiff can not recover."

The plaintiff excepted to each of these charges as given, and now assigns them as error, together with the several rulings on evidence to which, as above stated, exceptions were reserved.

J. N. WILLIAMS, for appellant, cited *Humes v. O'Bryan*, 74 Ala. 64; *Couch v. Woodruff*, 63 Ala. 466; *Wagner v. Simmons*, 61 Ala. 143; *Clark v. Taylor & Co.*, 68 Ala. 453; *McCrary v. Slaughter*, 58 Ala. 234; *Howze v. Patterson*, 53 Ala. 207; *Jemison v. Dearing*, 41 Ala. 283; *Nicholson v. Moog & Co.*, 65 Ala. 471.

J. M. WHITE, and H. D. CLAYTON, Jr., *contra*, cited *Baker v. Trotter*, 73 Ala. 277; *McCormick & Richardson v. Joseph & Anderson*, 77 Ala. 236; *Humes v. O'Bryan*, 74 Ala. 64; *Clark v. Taylor & Co.*, 68 Ala. 453; *Goetter, Weil & Co. v. Head & Co.*, 70 Ala. 532.

STONE. C. J.—The motive or intent with which an act is done, or refused to be done, frequently becomes a matter of pertinent inquiry in judicial administration. Before the enactment of our statutes making parties competent witnesses in their own behalf, there could be no direct proof of motive or intent, for no witness could have sufficient knowledge of another's mental operations to testify to them as facts. Hence, motive and intent were classed as inferential facts—facts to be inferred by the tribunal, from attendant facts in evidence.    In this State, although differing from the rule declared in some other States, we refuse to allow parties, when testifying in their own causes, to give evidence of their own uncommunicated motives or intentions.   We do this, because such testimony, in

[Ala. Fertilizer Co. v. Reynolds & Lee.]

its nature, is insusceptible of contradiction. The result is that, with us, motive and intent remain as they were at common law—inferences to be drawn from surrounding facts and circumstances.—*Sledge v. Scott*, 56 Ala. 202; *Baker v. Trotter*, 73 Ala. 277; *McCormick v. Joseph*, 77 Ala. 236. The Circuit Court did not err in the several rulings on testimony offered.

The present suit is for the collection of three promissory notes, dated May 1, 1884, bearing the signature of Reynolds & Lee, due severally October, November and December, 1884, and payable to the Alabama Fertilizer Company. Reynolds interposed the sworn special plea of *non est factum*, but Lee is not shown to have made defense. There were verdict and judgment for defendants.

As we understand the testimony, there is no dispute of the facts, that a business was conducted, during the years 1883 and 1884, in the name of Reynolds & Lee, and that they were engaged in the sale of commercial fertilizers. Neither is there any dispute that Reynold knew of, and sanctioned the use of his name, as a member of the firm of Reynolds & Lee. Up to this point there can, under the testimony, be no reasonable ground for difference of opinion. Neither of the defendants disputes the forgoing facts. The precise form in which the defense was presented is, that while the associated names of Reynolds and Lee were permitted to be presented to the public as partners, they were not in fact partners as between themselves; and that the apparent partnership was formed solely for the purpose of selling fertilizers on commission, with no power to make purchases. Both Reynolds and Lee prove such to have been the case, and that the only benefit or interest Reynolds had, or was to have in the adventure, was that he, Reynolds, should have what fertilizers he desired for his own use, with a discount from the price of the commissions for selling. This testimony is not contradicted. If these be the facts, there was no community of risks—no common interest in the profits and losses—and hence there was no partnership *inter sese.*—*Smith v. Garth*, 32 Ala. 368; *Meaher v. Cox*, 37 Ala. 201; *Mayrant v. Marston*, 67 Ala. 453; *Tayloe v. Bush*, 75 Ala. 432.

But persons who are not partners between themselves, may render themselves liable to third persons as partners, by suffering their names to be used as such; and this principle is as sound in morals, as it is binding in law. The reason is, that such permitted use of one's name imparts credit to the supposed partnership, in equal ratio with the credit of the person allowing his name to be thus used. Hence it is that a nominal partner—one having no interest, but permitting himself to be held out as such—is as much bound by contracts made in the

[Ala. Fertilizer Co. v. Reynolds & Lee.]

partnership name, as if he were a real partner.—*Nicholson v. Moog*, 65 Ala, 471; 2 Greenl. Ev. § 482; *Humes v. O'Bryan*, 74 Ala. 64, 82; Parsons on Part. *87.

But partnerships are not bound by every contract an individual member may make in the firm name. To be binding, it must be appropriate to the business in which the partnership is engaged.—Story on Part., §§ 110 to 113; *McCreary v. Slaughter*, 58 Ala. 230, 235; *Humes v. O'Bryan*, *supra*. "Each partner is the agent of the firm, as to all transactions coming within the scope of the partnership business. This general authority is to be tested by the nature of the particular business to which the partnership relates, and its ordinary usages."—*Clark v. Taylor*, 68 Ala. 453; Parsons on Part. *95; *Wilkins v. Pearce*, 5 Denio, 541.

Commercial fertilizers have become an article of merchandise, well recognized, if not as extensively dealt in as other lines of merchandise are. This is common knowledge, and we must be presumed to be cognizant of it. Persons engaged in the sale of merchandise as a business, must, in the nature of things, keep up their supplies, or stock in trade; and hence authority to purchase is to be inferred, as a function appropriate to the business. It is also common knowledge, in this highly commercial age, that persons engaged in the sale of merchandise as a business, purchase their stock frequently, if not generally, on credit, longer or shorter as the usages of the particular line of trade may be. It follows that, in any of the general mercantile transactions, in which the retail dealer is accustomed to purchase in bulk and sell by retail to his customers, one member of a firm thus engaged has absolute power to bind the partnership by the purchase of goods or commodities in which they are accustomed to deal, as if all the members were present, contracting. Each partner is the agent of the firm, to make all contracts which come within the scope of the partnership dealings. This is the general rule, and applies to partnerships which are engaged in buying and selling on their own account.

But there is another class of traders called commission-merchants, who sell but do not buy. Their particular designation is derived from the fact, that they are the mere agents to sell the goods of others, for a commission. They are distinguished from the former class, sometimes by the advertised or proclaimed line of business in which they are engaged; sometimes by the fact that they disclose their principals, and profess only to be intermediaries to bring seller and buyer together; sometimes by selling in the name of the principal, and possibly in other ways. A commission business is confined to the making of sales for others; and one partner has

[Ala. Fertilizer Co. v. Reynolds & Lee.]

no authority to bind his co-partner by purchases of goods to be sold in the business. His power to bind is confined to the scope of the partnership business, which is to sell, and account with fidelity for the proceeds of the sale.

But the question, whether a trader is a merchant dealing on his own account, or a commission-merchant selling for others, is, at last, but an inquiry of fact. It does not depend on any private agreement partners may have made among themselves, but upon the actual business they do. The public can not be supposed to have information of the private understandings of parties; but it can learn, and must be charged with a knowledge of, the particular line of trade in which the partnership is engaged. So, if a partnership be engaged in the purchase and sale of merchandise in their own name—in buying and selling as merchants do—this, in the absence of information to the contrary, will authorize the inference that they are merchants, and may be credited as such. One member of a partnership found so dealing may purchase and bind the firm, although directly opposed to some private agreement of the partners between themselves. And such purchase is no more binding on a real partner, than it is on one who simply permits his name to be held out to the public as a partner.

It is contended for appellee, Reynolds, and his testimony tends to prove it, that he had no knowledge that the firm of Reynolds & Lee were embarked in the business of buying and selling, until payment of the notes in suit was demanded of him. This, according to the testimony in this record, was near or quite two years after Lee commenced the purchase and sale of fertilizers on firm account. This plea of ignorance can not avail him. Having lent the use of his name as a partner in the firm of Reynolds & Lee, the public, without express information on the subject, could not know any limitation was imposed. They must judge of the use intended to be made of it, by the character of business done by the firm. It it did only a commission business, of course the right to purchase for re-sale would not be within the scope of its powers. If, on the other hand, it was engaged in the business of buying and selling, it was performing the functions of a commercial partnership; and the right to purchase on customary time would be within the scope of its presumed powers. The public would be authorized to act on such presumption, unless there was actual notice that the power did not exist. And Reynolds, if he did not know Lee was abusing his confidence, and employing the firm name in the purchase of merchandise, must be charged with a knowledge of it. The employment of the care and diligence which an ordinarily prudent man bestows on his own affairs, would have informed him that Lee was betraying

his trust, and obtaining improper credit on the strength of his name. To allow his plea of ignorance to avail him, would be to reward him for his gross negligence, at the expense of a suffering public, who had nothing to arouse suspicion, or stimulate inquiry. What is said in this paragraph is applicable to appellant's phase of the case, one feature of which is the contention, that when the sale was made, neither it nor its negotiating agent had notice that Lee had not power to bind the firm for the purchase of fertilizers. It does not apply, if, when the sale was mode, Lee had no such power, and plaintiff was informed of it.

We have attempted to define, so far as the wants of this case require, the purport of the expression, "scope of the partnership dealings." As between the partners themselves, this authority may be limited or controlled by special agreement; but, as to third persons, having no notice of such limitation, the partnership would be bound by the exercise of such general authority, by any one member of the firm.—*Clark v. Taylor*, 68 Ala. 453 ; Parsons on Part., * 102.

We have, several times, had occasion to criticise charges which called on the jury to compare the probative force of different witnesses, one with the other—the witnesses being equally credible, and having equal means of knowledge ; and we have uniformly expressed our disapprobation of such mode of charging juries. It is calculated to confuse and mislead them.—*Dorgan v. The State*, 72 Ala. 173 ; *Childs v. The State*, 76 Ala. 93. Charge No. 8, given at the request of defendant, is objectionable on this account, and was well calculated to confuse and mislead the jury. It is matter of regret that charges so complicated should ever be given. But tendency to mislead is not, of itself, a ground of reversal. There are, however, two clauses in charge 8, which refer to the jury the ascertainment of matters of law, which should have been decided by the court. The errors occur in those parts of the hypothesis in which the jury are asked to institute a comparison of the testimony of Storrs and Reynolds, and of the testimony of Lee and Rogers ; and are, in each case, almost identical in language. The following is one of the clauses which was submitted by the charge as an inquiry for the jury to pass on : "and if such conflict is about material matters, and the burden of establishing them is upon the plaintiff." It was the court's duty to inform the jury on whom the burden rested of establishing any given material fact.—*Spira v. Hornthall*, 77 Ala. 137.

Charge 10, given at the instance of defendant, asserts that "the burden of proving Reynolds' liability in this action is upon the plaintiff, in every aspect in which the case is presented."

There was one aspect presented, in which the burden was on Reynolds; the alleged notice given to Storrs by Reynolds, of the nature of his interest in the firm of Reynolds & Lee. A charge which misplaces the burden of proof is a reversible error.—*Thompson v. Duncan*, 76 Ala. 334.

There is a clause in charge 6, which is apparently stated as fact, and without hypothesis, which should be avoided on another trial. The language is, "the scope of which was the handling of guano upon commission."—*Gr. So. R. R. Co. v. Roebuck*, 76 Ala. 277.

Charge No. 3 ignores all those tendencies of the testimony that Lee purchased and sold fertilizers, during the year 1883, in the name of Reynolds & Lee, and the effect of such purchases and sales on Reynolds' liability, as declared above. This charge should not have been given.—*Thompson v. Duncan*, 76 Ala. 334; *Tesney v. The State*, 77 Ala. 33; *Savery v. Moore*, 71 Ala. 236.

Reversed and remanded.

CLOPTON, J., not sitting.