# Westbrook *v.* Fulton.

*Action for Unlawful Detainer of Land.*

1. *Proof of notice.*—Plaintiff's agent having four copies of a notice to be served on the defendants, delivering a copy to each of the three, and retaining one copy, which is produced on the trial, notice to produce the copies served is not necessary to render it competent as evidence, since each of the four papers is equally an original.

2. *Abstract charge.*—A charge asked, based on facts which there is no evidence tending to establish, is properly refused, because abstract.

3. *Charge misleading, or invading province of jury.*—When the testimony is indeterminate, circumstantial, or such that inferences of fact are necessary to complete its probative sufficiency, the rule imperatively requires that, in charging the jury, nothing shall fall from the lips of the presiding judge which tends in the slightest degree to invade their peculiar province in weighing and sifting the evidence; though the court may give proper instructions as to the burden of proof, legal presumptions, or any thing else that is merely matter of law.

[Westbrook v. Fulton.]

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by E. K. Fulton, against J. C. West-brook, Samuel Torrey, and E. C. Mackey; and was commenced before a justice of the peace, on the 5th February, 1885. The complaint alleged that the plaintiff was seized and possessed, in February, 1883, of the land which he sought to recover; that the defendants entered as his tenants "until the 2d September, 1892; and said tenancy having been forfeited, by a failure and refusal on the part of defendants to pay their lease, or royalty, as per contract of renting, refused to deliver possession, on demand in writing, but unlawfully withhold and detain the same." In the City Court, on appeal, the defendants filed two special pleas; the first alleging that, after the commencement of the tenancy, there was a modification of the terms of the lease, by which it was agreed that the royalty on the coal mined from the lands should be paid on the 15th of each month, instead of the 1st, and that the new contract was in force when the action was commenced; and the second, that plaintiff had accepted payment of the royalty after the first day of each month, and had thereby induced defendants to believe that strict payment on the day would not be demanded, and was estopped from insisting on the clause of forfeiture in the lease. Issue seems to have been joined on both of these pleas.

On the trial, as appears from the bill of exceptions, the plaintiff proved that the defendants entered into the possession of the land, for the purpose of mining coal, under a written lease for ten years, commencing September 1st, 1882; and that the lease contained the following (with other) stipulations: that the defendants should pay, "at the end of each month, a royalty of twelve and a half cents per ton for all coal mined on the land, and pay $7.50 per month, at the end of each month, whether or not coal enough was mined to make that sum;" and that if they failed to pay the royalty as stipulated, plaintiff might "declare the lease forfeited, and enter on and take possession of said land." He proved, also, that on the morning of January 30th, 1885, he demanded payment of the royalty (or rent) for that month, and that it had not been paid. He proved, also, by N. Hawkins, that he, acting as agent for the plaintiff, served on each of said defendants a written notice, declaring the lease forfeited, and demanding possession of the premises. The witness, as his testimony is set out in the bill of exceptions, did not state when he served this notice; but the notice which he produced, and which he said was "a correct copy" of the notices served, was dated February 2d, 1885. The court admitted this paper as evidence, against

[Westbrook v. Fulton.]

the objection of the defendants, but offered to exclude it if they would produce the notices served on them, which they failed to do; and to the admission of this evidence the defendants excepted.

The defendants introduced evidence tending to show that, on the 25th February, 1884, they sub-leased the premises for mining purposes to Harbin & McKinney, for the term of five years; that the sub-lessees were to pay the royalty on the 15th day of each month; that the plaintiff consented to this sub-lease, "in consideration of defendants' paying him a greater royalty, and to receive the royalty (or rent) on the 15th day of each month; that the same was thereafter paid to him by defendants, according to said last agreement, until May 30th, 1884, when said Harbin & McKinney surrendered their sub-lease, and defendants again took charge of the leased premises; that no further contract was made, as between plaintiff and defendants, as to the time for the payment of the royalty (or rent) due him; also, that they (defendants), during the term of their tenancy, have paid the royalty (or rent) due to plaintiff, sometimes before, and sometimes after the day fixed by the contract, without objection on the part of the plaintiff; and that on the 2d February, 1885, they tendered to plaintiff the royalty (or rent) due for the preceding month of January, and he refused to accept it." The plaintiff introduced evidence in rebuttal, "tending to show that, after the surrender of the sub-lease by Harbin & McKinney, it was understood and agreed between him and the defendants that the royalty (or rent) due him should be paid, as provided by their original agreement or lease, at the end of each month for which it accrued; that the same was thereafter so paid until the month of January, 1885; and that he notified said Westbrook (one of said defendants), on or about January 1st, 1885, that he intended thereafter to hold them to a strict performance of the terms of their lease."

On this evidence, the defendants requested the court, in writing, to charge the jury as follows: "The forfeiture claimed in the contract here relied on by plaintiff, like other forfeitures, is looked on by the courts with disfavor, and, being intended for the benefit of the plaintiff, slight evidence of waiver on his part is sufficient to show that it has been waived; and this may be done, either by express agreement, or by proof of subsequent dealings, on which the defendants relied, on which they had a right to rely, and which was calculated to make them believe that prompt payment would not be insisted on by plaintiff." The court refused this charge, and the defendants excepted to its refusal.

The rulings on evidence, the refusal of the charge asked, and other matters, are now assigned as error.

[Westbrook v. Fulton.]

R. H. Pearson, and O. Kyle, for appellants.

Hewitt, Walker & Porter, contra.

STONE, C. J.—As we understand the testimony of the witness Hawkins, he, as the agent of Fulton, plaintiff below, had in his possession four copies of a notice, issued in Fulton's name, three of which he served on the several defendants, and retained the fourth. The retained copy the witness produced on the trial. It bore date February 2d, 1885, and gave notice to each of the defendants that Fulton, their landlord, claimed a forfeiture of the leasehold interest, by reason that the defendants, his tenants, had failed to pay the rental and royalty therefor, according to the terms of the letting. This paper, and the testimony of the witness Hawkins, were offered, to prove that Fulton had elected to declare the lease forfeited, and had, in this way, given the defendants notice of such election. There was objection to the introduction of this paper in evidence, to prove that Fulton elected to treat the lease as forfeited. The court allowed the paper to go in evidence to the jury, and this is the subject of the first exception. The point of the objection was, and is, that the paper offered was but a copy, and no notice had been given to produce the originals, which had been left with the defendants.

As we understand the bill of exceptions, these papers or notices did not sustain to each other the relation of original and copy papers. One was as much an original as the others. The language of the witness was, "that acting for plaintiff, at his request, he handed to each one of the defendants a paper writing, of which he retained a correct copy;" which copy plaintiff produced, and offered to prove by said witness. If the statement of this witness be true, each of the papers, before service, was as much an original as the others were, for they were correct copies of each other. *Copy*, in the sense here used, does not mean that the notices served were first written, and the retained paper then made like them. Its natural sense and interpretation are, that each was a copy of the others, in the sense that one newspaper is a copy of each and every other newspaper printed at that time, and on that form; or that one book, of a given edition, is a copy of every other book of the same edition. This statement by the witness, that he retained a "correct copy," can not change the true nature of the transaction. Its most natural interpretation is, that the notice was prepared in quadruplicate form, and three were served, and one retained. The record does not present the question of primary and secondary evidence.—1 Greenl. Ev. § 561; 2 *Ib.* § 322; *Dumas v. Hunter*, 30 Ala. 75. If the papers were not quadru-

33

[Trimble v. Anderson.]

plicates of each other, the defendants had it in their power to correct the error, by producing the copies served on them.

The charged asked by defendants, and refused, had no evidence of waiver to base it upon, and it was rightly refused on that ground.—*Hill v. Townsend*, 69 Ala. 286. There is another objection to this charge. After referring to the subsequent dealings of the parties, as circumstances to which the jury might look in determining whether the plaintiff had waived his right to claim a forfeiture of the lease, the instruction contains the following clause, which is stated more in the form of asserted fact, than of hypothesis: "On which the defendants relied, on which they had a right to rely, and which were calculated to make them believe that prompt payment would not be insisted on by plaintiff." Under the most favorable construction, this charge was liable to mislead, and was rightly refused on that account. When testimony is indeterminate, circumstantial, or is such that inferences of fact are necessary to complete its probative. sufficiency, the rule is all the more imperative, that in charging the jury nothing shall fall from the lips of the judge which tends, in the slightest degree, to invade the peculiar province of that body to weigh and sift the testimony, and ascertain, for themselves, the facts it establishes. This does not interdict proper instructions as to the burden of proof, legal presumptions, or anything else which is matter of law. The jury being bound to accept the law from the court, and to act upon it, the presiding judge is equally bound to leave to the jury the ascertainment of facts which exist in parol.—Clark's Manual, § 2505; *Railroad v. Roebuck*, 76 Ala. 277.

Affirmed.