# Louisville & Nashville Railroad Co. *v.* Philyaw.

## *Statutory Action in nature of Ejectment.*

1. *Abstract charge.*—The refusal of a charge requested, even when it asserts a correct legal proposition, is not ground for reversal, unless the record affirmatively shows that it was not abstract—that there was evidence tending to prove every fact it supposes, or as to which it raises an inquiry.

2. *Adverse possession by successive holders.*—To make out an adverse possession for the statutory period of ten years, by tacking the possession of several holders together, privity between them must be shown, and continuity of possession without break or interval.

3. *Abandonment of possession by adverse holder; assessment and payment of taxes.*—An abandonment of possession by an adverse holder, before the completion of the statutory bar in his favor, whether for an indefinite period, or only for a day, and with an intention to return, breaks the continuity of his possession, and restores the possession of the rightful owner by operation of law; and neither the subsequent assessment of taxes against such adverse holder, nor his payment of them, avails as a continuance of his possession.

4. *Prior possession as evidence of title.*—As against a trespasser, a plaintiff in ejectment, or the statutory action in the nature of ejectment, may recover on proof of prior possession, although he was not in the actual possession when the defendant entered; and the defendant can not defeat his right to recover by proof of an anterior possession by a third person, with which he does not connect himself.

APPEAL from the Circuit Court of Escambia.

Tried before the Hon. JOHN. P. HUBBARD.

This action was brought by J. D. Philyaw, against the appellant corporation, to recover the possession of a tract of land containing forty acres, which was described as the north-west quarter of the south-west quarter of section thirty-five (35), township one (1), range eight (8); and was commenced on the 4th March, 1887. The cause was tried on issue joined on the pleas of not guilty, and the statute of limitations of ten years. The bill of exceptions purports to set out "substantially all the evidence adduced by the parties;" but it does not show when the defendant's possession commenced, or how it was acquired. The plaintiff relied on prior possession by himself, and title derived under a conveyance executed to him by L. J. Adams and wife, which was dated September 28th, 1872, and which the court admitted as evidence, against the objec-

tions and exceptions of defendant, in spite of manifest defects in its attestation and acknowledgment; but these matters require no special notice. "There was evidence of prior possession by plaintiff, independent of the deed." The defendant seems to have insisted that plaintiff had sold the land to one Geo. B. Milstead, who had married his niece, and that the latter had paid the purchase-money, and continued in adverse possession for more than ten years; and that said Milstead and wife sold and conveyed, by deed dated May 4th, 1885, to one S. C. Barrett, who afterwards sold and conveyed to the Mobile & Montgomery Railway Company. As proof of the sale by plaintiff to Milstead, and the latter's payment of the purchase-money, the defendant produced and proved a receipt for $25, given by plaintiff to said Milstead, which was dated March 20th, 1873, and purported to be given for "balance due on a trade for a piece of land, and sundry articles, being forty acres situated in section thirty-five;" and the deed from Milstead to Barrett, as also the deed from Barrett to the M. & M. Railway Company, were produced and proved.

James E. Creen, a witness for plaintiff, testified that he "never knew of plaintiff living on said land, and never had possession of it himself; that he received a letter from plaintiff about six years ago, probably more, appointing witness his agent, and sending him for collection a note for $75 on Milstead; that he did not know what the consideration of said note was, nor that any part of it was for the purchase-money of said land; that he met Milstead about six months afterwards, and asked him to pay the balance due on said land; and that Milstead said he could not then do so, but would just as soon as he could." Being asked, on cross-examination, why he demanded payment on the land under the circumstances, he answered, "I hoped to be able to get a compromise out of him on the note." The witness testified, also, that, after his appointment as agent, he had told a negro to go and live in a house on the land, but he did not know that the negro had ever done so; that he also stuck up notices, or warnings to trespassers, and served one on agents or servants of the defendant corporation, who then had a side track on the land, and were getting gravel; and that he never "gave the land in for taxes" as the property of plaintiff. B. F. Pringle, another witness for plaintiff, testified that he had known plaintiff and George Milstead for a long time, and knew them in 1872-3; that in 1872, or 1873, he made a

contract with Milstead "to get out timber for him," and while doing so, on one occasion, he went to the place where Milstead himself was cutting timber on the land; that Milstead invited him to dinner, "saying that his wife was living with her uncle, the plaintiff in this suit;" that he went with Milstead to the house, which was situated on the land in controversy, and there found plaintiff and Milstead's wife, whom he well knew; that he again went to the house, about two months afterwards, and found Milstead and his wife there, but not the plaintiff; that he never saw plaintiff on the land at any other time; that Milstead, with his family, "occupied the house continuously for eight or nine years, from the time he (witness) got out timber for him, until he (said Milstead) moved to Florida." The defendant introduced in evidence, besides the deeds and the receipt above mentioned, the books of the tax-assessor of the county for the years 1884 and 1885, showing that the land was assessed, during those years, as the property of said Milstead; and proved that the assessment books for prior years had been destroyed by the burning of the court-house.

On this evidence, the defendant requested the following charges in writing, and excepted to the refusal of each:

"2. If the jury believe from the evidence that, in 1872, or 1873, Milstead and Philyaw occupied the same house on the land; and that Milstead, while they were thus living together, was engaged in cutting the timber on the land, and received the money therefor, and was cultivating a small portion of the land; and further, that Philyaw left the premises during the year 1872, or about that time, and that Milstead continued to occupy the land, and to exercise acts of ownership over it; the jury may look to all these facts, if they find them to be facts, in determining whether he claimed the land as his own, as against Philyaw and all other persons; and if they find from the evidence that Milstead, Barrett and the defendant have held the land continuously for more than ten years, claiming it as their own, then they must find for the defendant."

"3. The plaintiff must recover, if at all, on the strength of his own title; and if the jury are not reasonably satisfied that the legal title to the land sued for is in him, they must find for the defendant."

"4. The jury have the right, in determining whether Milstead claimed the land as his own, to look at the fact, if from the evidence they find it is a fact, that the land was assessed

as his property prior to the purchase by the defendant, and that he paid the taxes on the same."

"5. The jury have the right, in determining whether Philyaw claimed the land here sued for as his own before bringing this suit, to look at the fact, if it be a fact, that he has not paid taxes on the land, nor had it assessed to him."

"6. Unless the jury are satisfied from the evidence that the legal title to the land sued for is now in Philyaw, and that he is entitled to the possession, they must find for the defendant.

"7. The jury have a right, in determining whether Milstead bought the land from Philyaw, to look at the fact, if it be a fact, that Philyaw never claimed to own but forty acres in section thirty-five."

The refusal of the several charges asked, and the rulings on evidence, are now assigned as error.

JONES & FALKNER, for appellant, cited *Wilson v. Glenn*, 68 Ala. 386; *Crosby v. Pridgen*, 76 Ala. 387; *Christy v. Scott*, 14 How. U. S. 282; *Wood v. Montevallo C. & T. Co.*, 84 Ala. 565; *Childress v. Calloway*, 76 Ala. 134; *Bohannon v. Chapman*, 13 Ala. 641; *Molion v. Henderson*, 62 Ala. 433; *Jay v. Stein*, 49 Ala. 514; *Baucum v. George*, 65 Ala. 259; *Morgan v. Casey*, 73 Ala. 226; *Potts v. Coleman*, 67 Ala. 221; 31 Me. 381; 85 N. C. 480; 6 Cal. 63; *Farley v. Smith*, 39 Ala. 38.

WATTS & SON, *contra*, contended that each of the charges asked was abstract and misleading.

McCLELLAN, J.—The assignments of error, which are directed against the rulings of the Circuit Court on objections to evidence, are virtually withdrawn in the argument of appellant's counsel, and we are requested to consider only those assignments which involve the correctness of the lower court's refusal to give the several charges requested by the defendant—appellant here. This court has uniformly held, that the refusal to give a charge, however sound may be the proposition of law it asserts, is not ground for reversal, unless the record shows affirmatively that there was evidence tending to prove every fact it supposes, or as to which it raises an inquiry.—*Williams v. Barksdale*, 58 Ala. 288; *Hill v. Townsend*, 69 Ala. 286; *M. & E. R. R. Co. v. Kolb*, 73 Ala. 396; *Westbrook v. Fulton*, 79 Ala. 510; *Jackson v. Tate, Muller & Co.*, 81 Ala. 253.

[Louisville & Nashville Railroad Co. v. Philyaw.]

The 2d, 4th, 5th and 7th charges requested by the defendant were bad, because each of them raised an inquiry as to one or more facts which the evidence had no tendency to prove. The facts thus gratuitously supposed to be in some sort supported by the testimony are, in the 2d charge, that "Milstead cultivated a small portion of the land," and that "Milstead and Barrett and the defendant have held the land continuously for more than ten years;" in the 4th charge, that the land had been purchased by the defendant, and that Milstead had paid taxes on it; in the 5th charge, "that Philyaw has not paid taxes on the land, nor had it assessed to him;" and in the 7th, "that Philyaw never claimed to own but forty acres in section 35, township one, range eight." Each of these instructions was, therefore, properly refused.

The effort of defendant was, it seems, to tack the possessions of Milstead, Barrett and itself, and thus constitute an adverse holding for the statutory period of ten years. This can not be allowed, for two reasons. One is, that no privity whatever is shown between Milstead and Barrett, on the one hand, and the defendant.—Taylor on Eject. 911: Burwell Lim. & Adv. Poss. §§ 238-241; *Hanson v. Johnson*, 50 Amer. Rep. 199; *Riggs v. Fuller*, 54 Ala. 141. The other consideration, which serves to defeat the claim of adverse possession is, that no one of the parties in whom it is attempted to show such holding, nor all of them combined, are shown to have had *continuous* possession for the time necessary to vest title. Milstead was in actual possession not exceeding nine years, and it is open to grave doubt whether this was hostile to Philyaw. He then abandoned the premises, and moved out of the State. But it is insisted that his possession must be held to have continued, notwithstanding this fact, because the taxes on the property for two years subsequent to his removal were assessed against him. Such an abandonment, even for a single day—here it was for an indefinite period—will stop the running of the statute (*Olwine v Holman*, 25 Pa. St. 279), and the rightful owner is, by operation of law, restored to the possession.—*Core v. Faupel*, 24 W. Va. 238. Nor would this result be affected by the subsequent payment of taxes—much less their mere assessment (*Ruffin v. Overby*, 88 N. C. 369), or though the abandonment was with an intention to return.—*Susquehana Railway Co. v. Quick*, 68 Pa. St. 189. Milstead's possession was not sufficient, therefore, to pass title into him.

Several years after his abandonment he conveyed to Bar-

[Louisville & Nashville Railroad Co. v. Philyaw.]

rett. No attempt is made to show that Barrett ever entered at all. The day following the conveyance to Barrett, he conveyed to the Mobile & Montgomery Railroad Company. No evidence is offered tending, in any degree, to show that this company ever entered, or ever conveyed the land, or delivered possession, to the Louisville & Nashville Railroad Company, the defendant and appellant in this suit. These facts present the defendant in the attitude of a naked trespasser. There was evidence of prior actual possession by the plaintiff, under color or claim of title. This actual possession, it appears, or may be conceded, did not continue to the time of defendant's entry. The proposition, that a recovery in this form of action may be had against a bare trespasser, on proof of prior possession in plaintiff, is not questioned. But it is insisted that the possession must be actual *at the time of*, and must be disturbed by, the trespass; that, in other words, plaintiff can not recover, unless he shows an actual *ouster*.

The precise point has never been directly adjudged by this court. Upon principle, however, we are forced to dissent from this view. The right in such case is not predicated on any supposed wrong committed against possession merely; nor upon any theory that defendant is estopped to dispute plaintiff's recovery of that which the defendant's wrongful act has deprived him of; nor upon any idea of re-establishing the *status in quo* of the parties which has been changed by the wrongful entry. These are considerations which obtain in purely possessory actions, proceeding without reference to title. But in ejectment, and in its statutory substitute, title is always involved. Recovery is not allowed upon prior possession *per se*, strictly speaking, but on the title which prior possession evidences. It is a basis of recovery against a trespasser, not because of the abstract fact that the plaintiff has previously occupied the land, but because of the presumption of title in the plaintiff which that fact raises. That against a bare trespasser such possession is sufficient proof of title, is the true meaning of the rule; and title once shown to exist, whether by the probative force of occupancy or otherwise, it is presumed—conclusively against such trespasser—to continue. It is not conceivable how, consistently with this well established presumption of the continuance of title once shown, inquiry as to the period covered by prior possession, or as to the point at which it determined, can become material.—*Clements v. Hayes*, 76 Ala. 280.

[Louisville & Nashville Railroad Co. v. Philyaw.]

This interpretation of the rule, which satisfies its requirements without proof of actual occupancy by the plaintiff up to the time of defendant's wrongful entry, is supported, negatively at least, by the case of *Crosby v. Pridgen*, 76 Ala. 387, in which the prior possession relied on was shown to have been more than ten years before suit brought, and it was held insufficient, not because it did not continue to the trespass, but because it was not shown to have amounted to actual occupancy. This view is also sustained by the extent either party may go in adducing a possession prior to that relied on by the other. Thus the defendant, even though he be a trespasser otherwise, may show another possession antedating that shown by the plaintiff; and the plaintiff may successfully respond, by admitting such previous holding, and giving evidence of another occupancy by himself still more remote in the past; and so the presumption of title resulting from prior possession "may be removed from one side to the other, *toties quoties*, until one party or the other has shown a possession which can not be overreached, or puts an end to presumptions by showing a regular legal title, or a right of possession." — *Smith v. Lecatt*, 1 Stew. 590.

The possession of the plaintiff, which the evidence tended to establish, was therefore of that character to which the law imputes title as against the defendant, and it could not be defended against by proof of title in third persons, between whom and the defendant there was no privity. *Eakin v. Brewer*, 58 Ala. 597; *Wilson v. Glenn*, 68 Ala. 386; *Crosby v. Pridgen*, 76 Ala. 387; *Green v. Jordan*, 83 Ala. 223; *Ware v. Dewberry*, 84 Ala. 568; *Anderson v. Melear*, 56 Ala. 621.

Charges 3 and 6 would have denied plaintiff's right to recover on proof of prior possession alone, and authorized the jury to find for the defendant, on the ground that the legal title was in a third person, with whom or whose right defendant had no connection. The charges were properly refused for this reason, and perhaps, also, for the reason that they submitted a question of law to the jury. The latter point, however, is not decided.

Judgment affirmed,