# Tennessee River Transportation Co. v. Kavanaugh Bros.

*Attachment Suit against Foreign Corporation.*

1. *Contract of hiring, with stipulation for purchase; "debt, or money demand," as ground of attachment.*—Under a contract for the hiring of a barge at an agreed price per day, with a further stipulation that, if

[Tennessee River Transportation Co. v. Kavanaugh Bros.]

the barge should not be returned in as good condition as when received, it was to be a bargain and sale at a specified price; the barge not being returned in good condition, the hiring is converted into a purchase, and the liability of the hirer a debt, or ascertained money demand, for which an attachment may be sued out before a clerk (Code, §§ 2929–31) without application to a judge.

2. *Acts and contracts of agent, as binding corporation.*—In the ordinary dealings of trading corporations, acting through agents within the purview of their charter powers, the same intendments and implications arise as would spring out of similar acts or conduct of natural persons; acts of a person assuming to represent such corporation, and transactions had with him, are binding on it, if subsequently ratified by it; and contracts made by him in his own name may be shown to be in fact the contracts of the corporation.

3. *Authority and business of corporation engaged in river navigation.* When a corporation is authorized by its charter "to build or purchase steamboats, and ply the same from one to another town or city within or beyond the limits of the State, to receive and carry freight and passengers, issue bills of lading in the corporate name, make all contracts for the purchase of supplies for said steamboats, and in general to do and perform all acts connected with the running of steamboats or packet-lines ;" it can not be assumed, as matter of law, that the corporation has no power to hire or purchase a barge for the transportation of wood, but is a question of fact for the jury, in connection with evidence showing the nature of the business which the corporation did carry on, and the practice and customs of the trade on the river.

4. *Acts and declarations of agent, as evidence against principal.* When the fact of agency has been established by other evidence, the acts and declarations of the agent, within the scope of his agency, are binding on his principal; and declarations or admissions accompanying an act done, and explanatory thereof, are admissible as a part of the *res gestæ;* but this rule, while equally applicable to corporations and private persons, does not extend to the agent's admissions or declarations as to a past transaction.

5. *Construction of charter and by-laws, as questions for court or jury.* The construction and interpretation of the charter and by-laws of a corporation, when involved in a pending suit, is a question of law for the court; but, in determining the nature of the business in which it is engaged, the practice and usages of that business, and the extent of powers conferred on its agents, questions of fact are presented for the decision of the jury.

APPEAL from the City Court of Decatur.

Tried before the Hon. WM. H. SIMPSON.

This action was brought by Kavanaugh Brothers, suing as a partnership, against the appellant, a private corporation created under the laws of Tennessee; and was commenced by attachment sued out before the clerk of said City Court, on the 6th April, 1889. There was a motion to dissolve and dismiss the attachment, on grounds stated in the opinion; and exception was reserved to the overruling of this motion. The amended complaint, on which the trial was had, claimed $675, as the value or agreed price of a barge, which the defendant had hired from the plaintiffs, under a contract which contained a stipulation that, if the barge was not returned in as good

condition as when received, it should be a bargain and sale at that price; but the plaintiffs claimed in this action only $400. The contract for the barge was made with plaintiffs by one C. H. Hobbs, who, as they insisted, and as their evidence tended to show, was acting as the defendant's agent at Decatur, under appointment by one Farnum, who was defendant's general manager. The fact of agency was disputed, and numerous exceptions were reserved by the defendant to rulings on evidence relating to the acts and declarations of said Hobbs.

The defendant excepted to several charges given by the court at instance of the plaintiffs, among which was the following: (7.) "If the by-laws of the defendant corporation, expressly or by implication, give authority to the general manager to appoint agents, then any contract made by an agent appointed by him in this case, if any such there was, and if the jury further believe that such contract was within the scope of the agent's authority, would be binding on the company, and it can not escape the consequences of such contract in this suit."

The defendant also excepted to the refusal of the following charges, which were asked in writing, with others: (9.) "If the jury believe from the evidence that the charter and by-laws of the defendant corporation would not authorize the general manager to purchase the barge, then any contract made by him, or any one appointed by him, would not bind the company." (11.) "If the by-laws of the defendant corporation do not authorize the purchase of a barge without authority from the board of directors, then the general manager can not confer on any one the authority to purchase it without authority from the board of directors." (12.) "If the jury believe that Hobbs had no authority from defendant to purchase the barge, and that the defendant did not afterwards ratify the purchase, they must find for the defendant." (13.) "If the jury believe from the evidence that no agent of defendant is [?] employed to purchase this barge without authority from the board of directors, then they must find for defendant." (14.) "The declarations of an officer of a corporation are not, of themselves, competent evidence to bind the corporation, nor are the declarations of an agent sufficient to establish the relation of agent and principal; and if the jury believe that the declarations of Farnum and Hobbs are the only evidence to establish his agency, they must find for the defendant." (16.) "If the jury believe from the evidence that the contract between plaintiffs and Hobbs was *ultra vires*, plaintiffs can not recover." (17.) "The mere declarations of

an officer of a corporation are not, of themselves, competent evidence to bind the corporation."

The assignments of error embrace all the rulings to which exceptions were reserved.

BRICKELL, HARRIS & EYSTER, for appellant.

E. W. GODBEY, *contra*.

STONE, C. J.—The present suit was commenced by original attachment at law, against the appellant, a foreign corporation, incorporated under the laws of the State of Tennessee. The affidavit for attachment sets forth that "the Tennessee River Transportation Company is justly indebted to W. K. Kavanaugh and L. T. Kavanaugh, as partners composing the firm of Kavanaugh Brothers, in the sum of four hundred dollars, after allowing all just off-sets and discounts, and that the said Tennessee River Transportation Company resides out of the State of Alabama," &c. Defendant moved to dissolve and quash the attachment, on the ground that the process was sued out before the clerk and register of the City Court of Decatur, and that the demand sued for was not such an one as that the statute authorized that officer to issue an attachment for its enforcement. The precise objection was, that the demand sued for was not "a debt," nor "a money demand, the amount of which can be certainly ascertained."—Code of 1886, § 2929, subd. 1 and 2, and § 2931.

The only testimony offered on the motion to dissolve was that of one of the Kavanaugh Brothers. He testified that the transportation company, through Hobbs, its agent at Decatur, obtained from Kavanaugh Brothers the use of a barge to be used by the company in its business of transporting freight on the Tennessee River; that the terms of the letting were, that the transportation company would pay two and a half dollars per day as hire for the barge, with a further stipulation that, if the barge was not returned in as good plight as when received, then it was to be a bargain and sale to the transportation company, at the agreed price of six hundred and seventy-five dollars. He testified further, that the transportation company kept the barge about thirty days, and then offered to return it in a ruined condition. Failing to return the barge in as good condition as when received, Kavanaugh Brothers claim that the transportation company thereby constituted itself the purchaser, at its agreed value. Why the present suit is for four hundred dollars, instead of six hundred and seventy-five dollars, the alleged agreed value, is not attempted

to be explained. Possibly, Kavanaugh Brothers had realized something, or there was some cross demand.

The City Court overruled the motion to dissolve, and we think rightly. If the agreement was as testified by Kavanaugh, then the failure to return the barge in like condition as when received, converted the hiring into a purchase, and the liability into a debt, or ascertained money demand.—2 Benj. Sales, 794 *et seq.*; 3 Brick. Dig., § 25.

The Tennessee River Transportation Company is a corporation deriving its powers and lawful organization from the State of Tennessee. It was incorporated under a general statute, in proceedings had in Hamilton county—the county in which the city of Chattanooga has its *situs*. It is familiar knowledge, that Chattanooga is on the bank of the Tennessee river, which flows for many miles through each of the States, Tennessee and Alabama. The charter of the company is set out in the transcript, together with many by-laws of the corporation. The general purpose and powers of the corporation are set forth in the charter. They are comprehensive. Its chief business may be gathered from the following extract from the charter: "The said company is authorized to build or purchase steamboats, and ply the same from one to another town or city in this State, or beyond the lines of the State, receive and carry freight and passengers, issue bills of lading in the corporate name, make all contracts for the purchase of supplies for said steamboats, and in general, to do and perform all acts connected with the running of steamboats, or packet-lines." There are other provisions in the charter which confer large powers. The by-laws copied in the statement of facts, and other testimony found in the record, tend to show that the "general manager" of the corporation was clothed with large powers in the government and general management of the affairs of the company.

The theory on which it is claimed the present suit is maintainable is, that Hobbs was the agent of the Tennessee River Transportation Company at Decatur, Alabama, and that as such he made the contract with Kavanaugh Brothers set forth above, by which the company obtained the lease and custody of the barge, the value and price of which this suit is brought to recover. The defense takes several shapes: *First*, that Hobbs made no contract for the company, or in its name, but that he hired the barge for his own use; *second*, that he was not its agent; and third, that the company was without corporate power to make the contract.

The testimony in the record before us is in lamentable conflict, and exceptions were reserved to much that was offered

VoL 93.

to be proved. It is not our intention to notice every exception, but to state general principles, and then apply them to certain of the trial court's rulings.

The old rule, that corporations can speak and act only through their governing bodies, has been very much relaxed. Commercial necessity demanded the relaxation. Trading corporations, or such as are engaged in transportation to or from distant points, and some others, would be greatly embarrassed, or retarded, if required to conform strictly to specified forms once deemed essential in corporate action. Hence, in the ordinary dealings of trading corporations, and within the scope and purview of their chartered powers, the same intendments and implications arise, as would spring out of similar acts or conduct of natural persons.—*Ala. & Tenn. River R. R. Co. v. Kidd*, 29 Ala. 221; *Ga. Pac. Railway Co. v. Propst*, 83 Ala. 518; 1 Morawetz Corp. §§ 365 *et seq;* Wood's Field Corp., §§ 182 *et seq.;* 1 Amer. & Eng. Ency. of Law, 369.

Much testimony was introduced, and exceptions reserved to its admission, of acts and transactions had with Hobbs, in which he represented, or assumed to represent, the Tennessee River Transportation Company as its agent, and of the Transportation Company's ratification of such acts. Testimony of this character was clearly legal, as tending to prove that Hobbs was the company's agent.—*Galbreath v. Cole*, 61 Ala. 139; *Womack v. Byrd*, 63 Ala. 500; 3 Brick. Dig. 22, § 46.

As tending to prove that Hobbs was agent, and that the barge was employed in and about the business of the Transportation Company, a written contract was put in evidence, against the objection of defendant. The first clause of the contract is as follows: "This agreement made between H. A. Sparrow, agent of the American Oak Extract Company, and C. H. Hobbs, agent of the Tennessee River Transportation Company." The clause is as follows: "The above personal property, all for the sum of two hundred and twenty-five 50-100 dollars, paid by receipt of the Trans. Co., and charged to their account on the books of the American Oak Ex. Co." This contract was signed, "*H. A. Sparrow;*" "*C. H. Hobbs.*" The objection to this paper as evidence was, that on its face it was the individual, personal contract of C. H. Hobbs, and not the contract of the Transportation Company. *Prima facie* this may be true. But there was testimony tending to show that the Transportation Company recognized the property purchased as its property, and subsequently sold it back to the American Oak Extract Company. The testimony further tended to prove that the purchase of the barge was intended to be and was for the Transportation Company, and not for

Hobbs. Such testimony was admissible, and a contract thus executed may be shown to be in fact the contract of the corporation, and not of the individual signing it.—*Drake v. Flewellen*, 33 Ala. 106 ; *Bank of Montgomery v. Plannett*, 37 Ala. 222. The City Court did not err in receiving this testimony, nor in allowing proof of acts done by Hobbs, which the Transportation Company recognized as its acts.

It was doubtless a material question in the trial court, whether the employment of barges was one of the agencies by which the Transportation Company exercised, or proposed to exercise, the functions of the corporation. As matter of law, we can not know that such was not the case. The bill of exceptions does not purport to set out all the testimony, and it is silent on this question. Whether Hobbs was the agent of the company ; whether the barge was used in its business ; whether it was leased by him for the company, or for his own private purposes, were questions of fact for the jury, and not of law for the court. We can not presume there was an omission of material testimony, and make the record's silence a predicate for presuming error. Nor can we, as matter of law, affirm that the Transportation Company's charter did not authorize the employment of barges in its business. This, too, was a question of fact for the jury, under proper instructions.

We have thus shown that the chief grounds upon which the liability of the company depends were questions of fact.

There was testimony tending to show that, by acts of ratification, the Transportation Company furnished proof that Hobbs was its authorized agent, and that he made the agreement for the use of the barge as such agent.—3 Brick. Dig. 20-1, §§ 17, 20, 41, 44. This testimony made each of these inquiries a question of fact for the jury, and had the effect of letting in the evidence of acts done-by Hobbs which shed light on the issue before the jury; not as *per se* tending to prove he was agent, but as tending to prove the fact and terms of the hiring, in the event the jury found he was the agent of the Transportation Company ; and the rule has this further extent : If the jury was convinced, by evidence other than his admissions, that he was the company's agent, then any act done by him within the line of his agency, and within the scope of the company's chartered powers, was binding on it, and any declaration made by him accompanying an act of agency, and explanatory thereof, was equally admissible on the doctrine of *res gestæ*. But this doctrine does not let in the agent's admissions of a past or outside transaction, not in negotiation or process of consummation at the time of the admission. It must be *res gestæ* of something then occurring, and not a nar-

rative of a past transaction.—3 Brick. Dig. 419, §§ 187 *et seq.;* 1 Greenl. Ev. §§ 113, 114; 2 Whar. Ev. §§ 1173, 1183. In several instances, pending the trial, witnesses were permitted to testify to what Hobbs had told them of some past transaction, or of some alleged fact not then occurring. This was error, even if it be conceded that Hobbs was agent of the defendant corporation. His admissions, as we have seen, unless made in connection with some act of agency done by him, are not competent evidence against the Transportation Company.

Several of the charges asked are so framed as to submit to the jury the interpretation of the charter and by-laws of the defendant corporation, and the extent of power they conferred in the matter of appointing agents. Charge 7, given at the instance of plaintiff, and charges 9, 11, 13, 14 and 16 asked by defendant, are all faulty in this respect. The proper interpretation of the charter and by-laws was for the court to determine, and in no sense a question for the jury.—*Inge v. Murphy*, 10 Ala. 885.

We do not think, however, that the charter and by-laws of the Transportation Company must be alone looked to in determining the power of the corporation to appoint agents, the extent of power such agents can exercise, and whether in its business it was necessary or proper for it to employ barges. Much must depend upon the character of the business in which the corporation was engaged, the habits and navigability of the Tennessee river, and the rules and customs of the trade adopted and pursued by the Transportation Company in conducting its business.

The Tennessee river flows many miles through two States, and to carry on the business of the corporation properly, would require many agents distributed along the line. Whether the use of a barge fell within the scope of the business operations and its mode of conducting them, was a question of fact for the jury, and not of law for the court. If the jury find that such was its custom, and further find that Hobbs was the company's agent, and as such made the alleged contract with Kavanaugh Brothers, and that the Transportation Company took charge of the barge, and used and destroyed it in its own business, then the Transportation Company is liable. On the other hand, if it is not shown that the use of a barge was within the range of the Transportation Company's methods of doing business, then Hobbs had no authority to bind the company for the safe return of the barge, and the plaintiff can not recover in this suit. In such case, if any recovery could be had against the Transportation Company, it would have to be sought in a different form of action, for the negli-

[Skipper v. Reeves.]

.gent injury or destruction of the barge, if the injury was suf-
·fered through the negligence of the Transportation Company.
·So, if, as defendant contends, Hobbs hired the barge in his
own name, and for his own purposes, and not as the agent of
the Transportation Company, then plaintiffs can not recover
in this action.

We will not comment on all charges asked by defendant.
Those numbered 12 and 17 ought to have been given. What
we have said will furnish a sufficient guide for another trial.

Reversed and remanded.