# CASES

# SUPREME COURT OF ALABAMA.

### NOVEMBER TERM, 1892–93.

## Tennessee River Transportation Co. v. Kavanaugh Bros.

### Action to Recover the Value of a Barge.

1. *Agents of a corporation; appointment.*—No formalities are essential to the appointment of an agent of a corporation unless expressly provided by its charter. They may be appointed in the same manner as the agents of individuals; and if a person is allowed to act as agent for a corporation, with the knowledge and acquiescence of a superior agent, or of one in authority who has power to appoint him, the corporation will be bound by such acquiescence, and can not repudiate the agency.

2. *Power of general agent under appointment by resolution of board of directors.*—An agent of a corporation, who, by a resolution of the board of directors of said company, is "authorized to take full charge of the company's business, and to enter into such negotiations and contracts as he thinks best for the company's interest," has power to do any act within the scope of the business operations of the corporation, and in the discharge of such duties has authority to appoint an agent with power to make contracts to bind the company.

3. *Same; power of local agent appointed by general agent.*—Where a general agent of a corporation, with plenary powers conferred by resolution of its board of directors, introduces to third persons his appointee as the local agent of the corporation, with the assurance that any transaction had with the said local agent would be entirely satisfactory to and approved by the corporation, the corporation can not be relieved of its liability on a contract made by such local agent with the parties to whom he was introduced, by showing that the contract was, in fact, in excess of his powers.

4. *Evidence of agency.*—In an action against a corporation founded upon a contract alleged to have been made with the defendant's agent, it is competent to prove, as tending to show the existence of

1

the agency, that the alleged agent had made contracts with other persons as such agent, which were ratified by the defendant corporation.

5. *When an appellate court reviews an action of the trial court upon the admissibility of evidence.*—To justify a review by the appellate court of a ruling by the trial court upon the admissibility of evidence, the record must show affirmatively that the trial court made a ruling, which was excepted to at the time, or that counsel called attention to the question and requested a ruling upon it, which the trial court failed or refused to make, and that counsel making the request then and there reserved an exception to the court's failure or refusal to make such ruling.

6. *Sale of property; evidence of acts of ownership.*—In an action to recover the price of property alleged to have been sold to the defendant, evidence of any acts of ownership or control over the said property by the plaintiffs, subsequent to the sale counted upon, is admissible as tending to disprove the alleged sale.

7. *Rulings upon the evidence; error without injury.*—Where competent evidence, which has been erroneously excluded, is afterwards introduced on renewed inquiry, the error of its former exclusion is cured, and becomes error without injury

8. *Agent of corporation at a particular place; irrelevant testimony.*—In an action against a corporation, founded upon a contract made with the defendant's agent, the question at issue being whether the person with whom the plaintiffs dealt was, in fact, the defendant's agent at a certain place, evidence that he transacted business for the corporation at another place sheds no light upon the inquiry, and is irrelevant.

9. *Admissions of agent against his principal; admissibility as a predicate for impeachment.*—Although in an action against a corporation, founded upon a contract alleged to have been made with the defendant's agent, an admission made by such agent is not competent evidence against his principal, unless that admission was made in company with, and at the time of the act of agency which it was intended to explain; still the question which calls for such evidence may be admissible for the purpose of laying a predicate for the introduction of impeaching testimony.

10. *Exercise by agent of powers not expressly conferred; when binding.* When, in the discharge of the duties imposed upon him, it becomes necessary for the agent of a corporation to take immediate action, and a consultation with the governing board would be impracticable, such agent may, in the interest of conservation, exercise powers not expressly conferred upon him; and such action is binding upon the corporation.

APPEAL from the City Court of Decatur.

Tried before the HON. W. H. SIMPSON.

This was an action brought by Kavanaugh Brothers to recover of the Tennessee River Transportation

Company $675, the value of a barge alleged to have been rented by the defendant under a contract, that if it failed to return the barge in as good condition as it was when received by the transportation company, it was to pay plaintiffs $675.

The facts of the case are sufficiently stated in the opinion. On the examination of one Lewis, as a witness for the plaintiffs, he testified that he had several business transactions with C. H. Hobbs, as agent for the Tennessee River Transportation Company, and that the company had ratified the said transactions. The plaintiffs introduced in evidence an agreement made between the Tennessee River Transportation Company by C. H. Hobbs, as agent, with the American Oak Extract Company, of which the witness, Lewis, was agent. The defendant objected to the introduction of this paper, because it was irrelevant and immaterial. The court overruled said objection, and the defendant duly excepted.

Upon the examination of said C. H. Hobbs, and after he had testified that when away from Decatur he was at work on the river between Guntersville and Decatur, he was asked: "What were you doing during the time you were up the river?" Plaintiffs objected to this question, the court sustained the objection, and defendant duly excepted. The witness was then asked by defendant this question: "State whether or not you transacted any business for the transportation company away from Decatur except clerical work done on the boat?" The plaintiffs objected to this question, and their objection being sustained, the defendant duly excepted. On the cross-examination of the witness Hobbs, and after denying that he had an agreement with the plaintiffs to buy the barge in question, the plaintiffs asked the said witness the following question: "State if on or about the 25th of March, 1889, at the foot of Bank Street near the river, you did not have a conversation with Kavanaugh Brothers, in which you said the Tennessee River Transportation Company ought to pay Kavanaugh Brothers for the barge, and that you were going to Chattanooga soon to see that they did pay them for it; and at the same time did you not get from Kavanaugh Brothers a check that they had given to the transportation company, in payment of the bill for towing, saying that you

wanted to use the check to show them that you had turned it in all right, and that you would take it up there and give them hell on that check business ; and did you not threaten to sue them ?'' Defendant objected to this question because it was irrelevant and immaterial ; and on the ground that it was a narrative of a past transaction, and called for declarations of an agent after the agency had ceased. Plaintiffs' counsel stated to the court that their object in asking this question was for the purpose of impeaching the witness. The court over-. ruled the objection, and the defendant duly excepted. Upon the further cross-examination of said witness he was asked the following question: "Did you not ask Kavanaugh Brothers to submit you a statement as to what they would take from the Tennessee River Transportation Company in settlement of the barge matter, about April 14th, soon after the commencement of this suit ; and did you not make of Louis T. Kavanaugh a verbal request for a statement in writing, saying that you thought you could get a settlement for this barge from Tennessee River Transportation Company?'' The defendant objected to this question upon the same grounds interposed to the question just above. The counsel for plaintiffs "stated that he did not ask this question to call forth independent evidence, but solely for the purpose of impeaching the witness.'' The court overruled the objection, and the defendant excepted.

Upon the cross-examination of one T. V. Meyer, who testified that he was secretary and treasurer of the defendant, he was asked this question by the defendant : "State whether or not you, as secretary of this company, ever signed a certificate and filed it in the office of Secretary of State, at Montgomery, designating a known place of business and an authorized agent thereat?'' Plaintiffs objected to this question, objection was sustained, and defendant duly excepted. On the cross-examination of one L. M. Meyer, a witness for the defendant, he stated : "I know Hobbs did not have authority to buy a barge, because the board of directors never empowered him to do so.'' The plaintiffs objected to this statement and moved to exclude it, which motion the court sustained, and the defendant duly excepted. In rebuttal, the plaintiffs introduced L. T. Kavanaugh, one of the plaintiffs, as a witness, and asked him this

question: "State if on or about the 25th of March, 1889, at the foot of Bank Street in Decatur near the Tennessee river, you had a conversation with C. H. Hobbs about the purchase of the barge in this suit?" Defendant objected to this question on the ground that it was irrelevant and immaterial; and that it evoked a declaration of an alleged agent after the agency had ceased. Plaintiffs stated that he asked this question solely to impeach Hobbs. The court overruled the question, and the defendant duly excepted.

Among the many charges given at the request of the plaintiffs was the following: (17.) "I charge you, gentlemen of the jury, that under the evidence the general manager of the defendant, to-wit, Farnum, had authority to appoint agents to make contracts to bind the company, and if you believe from all the evidence that he did appoint Hobbs the agent of the defendant at Decatur, or held him out to the plaintiffs as such agent, and that Hobbs made the contract with the plantiffs as set forth in the complaint, and that defendant or its agents injured and ruined the barge procured by Hobbs from plaintiffs, and that the use of a barge was within the scope of defendant's business operations, your verdict must be for the plaintiffs."

The defendant separately excepted to the giving of each of the several charges requested by the plaintiffs, and also separately excepted to the court's refusal to give the several charges requested by it. The opinion renders it unnecessary to set these charges out at length. There was judgment for the plaintiffs, and the defendant appeals; and as signs as error the several rulings of the trial court on the evidence, and the giving and refusing the several charges asked.

HARRIS & EYSTER, for appellant.—(1.) The statement of Farnum introducing Hobbs to the plaintiffs was not made in and about any business of the defendant, nor while in the discharge of his duties as general manager. The declarations of Farnum were, therefore, not binding on defendant.—*Danner Lumber Co. v. Stonewall Ins. Co.*, 77 Ala. 184; *Ricketts v. Birmingham St. Railway Co.*, 85 Ala. 600; 5 So. Rep. 353. (2.) The purchase of the barge by Hobbs was in excess of his authority, and the

plaintiffs in dealing with him were bound to know the extent of his authority.—*Johnson v. Ala. Gas, Fuel and Manf'g Co.*, 90 Ala. 505, 8 So. Rep. 101; *Burks v. Hubbard*, 69 Ala. 379; *Ladd v. Shattock*, 90 Ala. 134, 7 So. Rep. 764; *Cummins v. Beaumont*, 68 Ala. 204; 3 Brick. Dig., 22, § 54 *et seq.* (3.) The question asked one of the plaintiffs as a witness as to a conversation with Hobbs was erroneous. It was a mere narrative of a transaction, and that after the said Hobbs had left the employment of the defendant.—*Tennessee River Trans. Co. v. Kavanaugh*, 93 Ala. 324, 9 So. Rep. 395.

E. W. GODBEY, *contra.*—(1.) An officer of a corporation has implied authority to appoint sub-agents, whenever necessary, or authorized by usage.—*Johnson v. Cunningham*, 1 Ala. 249; Story on Agency, § 14; 1 Amer. & Eng. Encyc. of Law, 369; Wood's Field on Corp., §§ 182, 183; *Ala. & Tenn. R. R. Co. v. Kidd*, 29 Ala. 221; *Tenn. River Trans. Co. v. Kavanaugh*, 93 Ala. 331, 9 So. Rep. 395. (2.) Hobbs acted and contracted for appellant in so many instances, diverse in their character and effect, with its knowledge and consent, that the presumption of his appointment could not be denied even if no express authority was shown.—Story on Agency, (9th Ed.) §§ 10, 443, note; Bishop on Contracts, §§ 1102, 1101, 1100; Wood's Field on Corp., § 101. (3.) The emergency calling for a barge at the particular time was so grave and urgent as to "justify even a deviation from the ordinary limitations and import" of the authority.—Story on Agency, (9th Ed.), § 85.

STONE, C. J.—This is the second appeal in this case—93 Ala. 324, 9 So. Rep. 395. Most of the facts are stated in the report of the former decision. The testimony tended to prove the following facts, and, to this extent, there was little or no conflict. The defendant company was a foreign corporation, owning steamboats, and plying them between Decatur, Alabama, and points on the river above. It transported passengers and freight for hire, and, in connection with its freight business, it was in the habit of employing barges. It owned some barges. The barge which gave rise to the present suit was the property of Kavanaugh Brothers, and it was lying in the river at Decatur. Hobbs made a contract with Kavanaugh

Brothers for the hire of the barge, and agreed to pay for its use a fixed compensation for every day he might retain it, and to return it in good repair. Failing to so return it, he agreed to pay for it as upon a purchase. The barge was taken in tow by one of the steamboats of the defendant corporation, was carried up the river, and was not returned to Decatur until a month afterwards. When returned it was very materially damaged, if not ruined, and Kavanaugh Brothers refused to accept it. They then brought the present suit to recover its alleged value. To this extent, as we have said, there was a substantial agreement in the testimony.

It was contended for plaintiffs, and their testimony tended to prove the contention, that they did not contract with Hobbs in his individual capacity, or on his credit. That Hobbs was the agent of the Tennessee River Transportation Company, and made the contract in its name and for its use. Their testimony tended to show that Hobbs, as such agent, had authority to make such contract for, and in the name of the transportation company. It went further, and tended to show that one Farnum, at and before the hiring of the barge by Hobbs, was the general manager of the transportation company, having large powers and control, and that he had introduced Hobbs to Kavanaugh Brothers and others as the transportation company's agent at Decatur, having power to contract in the name of the corporation. There was also testimony for plantiffs tending to show that Hobbs had made contracts, one or more, in the name of the transportation company, which that company had ratified and complied with; purchasing property and the company paying for it.

The testimony for defendant was in conflict with that last stated. It denied the agency, denied that the contract was made in the name, or for the use, of the transportation company, but claimed that it was the individual contract of Hobbs himself. It gave testimony tending to rebut, explain, and parry the alleged acts of ratification.

We think we are in safe bounds when we affirm that Mr. Farnum, when he was the managing agent of the corporation, was clothed with very large powers; and there is nothing in the transcript before us to controvert or impair the force of that conclusion. We take a fur-

ther step. It is shown without conflict that the transportation company employed barges in its business. They were used as lighters when the river was low. The tendency of the testimony is strong, that in some lines of their business—particularly in transporting timber—barges would be and were a convenience, if not a necessity. And there is testimony tending to show that in certain emergencies, such as a sudden rise of the waters in the rivers, it might become necessary to bring them into immediate service. Are not all these contingencies within the reasonable purview of the business the transportation company was engaged in? No unbending rule can be declared which defines and fixes the extent of incidental powers a corporation may exercise, nor the agencies and means through which it can and may exercise its functions. In the nature of things much must depend on the line of business the coporation is engaged in. Those whose powers and functions may be characterized as ambulatory have need of much more flexible rules than those whose entire business is transacted at a fixed, defined place.

In our former opinion we stated the main issue in this case to be one of fact. We said: "Whether Hobbs was the agent of the company; whether the barge was used in its business; whether it was leased by him for the company, or for his own private purposes, were questions of fact for the jury, and not of law for the court. * * * Whether the use of a barge fell within the scope of the business operations and its mode of conducting them, was a question of fact for the jury, and not of law for the court. If the jury find that such was its custom, and further find that Hobbs was the company's agent, and as such made the alleged contract with Kavanaugh Brothers, and that the transportation company took charge of the barge, and used and destroyed it in its own business, then the transportation company is liable."

Plantiffs rested their right of recovery in this case on the following grounds, which they undertook to establish by proof, and which they claim they did establish, namely: That the transportation company, being a foreign corporation incorporated in Tennessee, and its business calls and duties extending many miles up and down the river in Tennessee and Alabama, it must needs do much of its business away from the home office,

and through its agents ; that it constituted A. M. Farnum its general manager with very large powers ; that he, Farnum, appointed Hobbs to be agent at Decatur, and clothed him with large powers, or, at all events, held him out to the public as being so clothed, and that Hobbs, contracting in the name of the corporation and professedly for its use, made the contract with plaintiffs, which is declared on in the present suit.

Plaintiffs introduced in evidence a resolution or motion adopted by the transportation company's board of directors, by which it was declared, "that A. M. Farnum is hereby authorized to take full charge of the company's business, and enter into such negotiations and contracts as he thinks best for the company's interest." This resolution was adopted in April, 1888, and under it Farnum continued in the company's employment until after the making of the alleged contract between Hobbs and Kavanaugh Brothers. Each of the Kavanaugh brothers testified that Farnum introduced Hobbs to them, "as agent of the Tennessee River Transportation Company at Decatur, and said he was going to make his headquarters at Decatur, and attend to their business ; and that any transaction we [Kavanaugh Brothers] might have with Hobbs would be entirely satisfactory and approved by the company. That he was the authorized agent, and we could deal with him as such." Another witness, engaged in business at Docatur, testified that Farnum introduced Hobbs to him, with substantially the same declaration as to his agency and powers as that testified to by the Kavanaugh brothers. The Kavanaugh brothers testified to the making of the contract with Hobbs as agent of the transportation company ; but Hobbs denied this, denied his agency, and disclaimed all authority to make a contract binding the company. There was other testimony in conflict with that of the Kavanaugh brothers, on the question of Hobbs' agency for the company.

Formerly corporations were very much hampered by rules and forms in making lawful and binding contracts. The wants of commerce have caused liberal relaxations in that regard. We spoke of this in our former opinion —93 Ala. 324. In 1 Morawetz on Corporations, §504, it is said : "The agents of a corporation may be appointed in the same manner as the agents of an individual ; no for-

malities are required, nor is the use of the corporate seal necessary, unless the contrary be expressly provided by the company's charter. * * * If a person is allowed to act as agent for a corporation with the knowledge and acquiescence of the superior agent or authority, who would have authority to appoint him, the corporation will be bound by such acquiescence, and can not repudiate the agency." In 1 Amer. & Eng. Encyc. of Law, 338–9, the principle is thus expressed : "It is now generally held that a corporation may appoint agents by a written vote of its directors, or by implication, unless the charter makes a different appointment obligatory." And in 2 Morawetz on Corporations, § 585, is this language : "A principal, who employs an agent in a particular transaction or course of business, thereby impliedly invites persons dealing with the agent in that particular transaction or course of business to rely upon the agent's apparent powers, so far as this is essential to render safe dealing with the agent possible ; and the principal will be liable to the person so dealing with the agent in good faith, within the scope of his apparent powers, although the agent may have transgressed the authority which the principal intended he should exercise."

We do not hesitate to declare, that, under the resolution adopted by the board of directors, Farnum was clothed with power to appoint Hobbs agent of the corporation, and to invest him with large powers. Neither can it be affirmed, as matter of law, that the alleged power, which the testimony of plaintiffs tends to show was conferred on Hobbs, was in excess of the authority the board of directors had vested in Farnum. Nor will we say that the contract, which plaintiffs testify Hobbs made with them, was outside of the powers which Farnum could himself exercise, or authorize Hobbs to exercise. So, the real points of contention in this case were, first, whether Farnum appointed Hobbs agent of the corporation, or informed plaintiffs he had so appointed him ; and, second, whether in making the contract for the use of the barge, he contracted in the name of the transportation company, or in his own individual name. It may be added, that if Farnum, in introducing Hobbs to Kavanaugh Brothers, employed the language they testified he did employ, this authorized them to

trust and trade with him as such agent; and the corporation can not relieve itself of liability, even by proving that in fact his powers did not extend so far. Apparent power, in such conditions, if authorized or sanctioned by the corporation, is the equivalent of actual authority.

We hold that all the testimony introduced tending to prove Hobbs' agency for the transportation company, to which an exception was reserved, was free from objection. Agency may be proved in many ways. Acts ratified or acquiesced in by the principal, or holding one out as agent, are among the methods and instrumentalities by which the relation is proved; and it is frequently implied from circumstances and the conduct of the parties towards each other. This lets in proof of acts and conduct of the parties in relation to each other, which have no direct reference to the issue on trial, if they tend to prove that the relation exists, or was acted on as existing.—2 Greenl. Ev., §§ 60, 62, 65, 67; 1 Amer. & Eng. Encyc. of Law, 338–9, 340; *S. & N. R. R. Co. v. Henlein*, 52 Ala. 606; 3 Brick. Dig., 20, § 10; *M. & M. Railway Co. v. Jay*, 61 Ala. 247; *Clark v. Taylor*, 68 Ala. 453. But a single act of ratification is not necessarily sufficient proof of the agency.

Proof that the witness Hobbs had previously made a statement different from what he testified to on this trial was not competent, save as a means of impeaching him. And when offered for that purpose, it was necessary to interrogate him as to such previous statement, fixing time and place, or otherwise directing his attention to the conversation by identifying circumstances.—3 Brick. Dig. 828. The rule was strictly conformed to in this case.

The testimony of one of the Kavanaughs that Farnum had made an admission, implying the liability and duty of the transportation company to pay for the barge, being at most only an admission of a past transaction, was not legal evidence. An objection had been filed to the interrogatory which called it out, but the transcript fails to show that the city court was required to rule upon it. To justify the action of this court upon the admissibility of evidence in the trial court, the record must show affirmatively that that court made a ruling which was excepted to at the time, or that counsel called attention to the question and requested a ruling upon it, which

the trial court failed or refused to make, and that counsel making the request then and there reserved an exception to the court's failure or refusal to make the ruling. This question is not before us.

The right of plaintiffs to recover of the transportation company the alleged stipulated price and value of the barge, was rested on the following postulated facts, which they attempted to prove : That Hobbs was the authorized agent of the transportation company ; that as such agent, in its name and for its use, he hired the barge at an agreed rent per day, with a further agreement to return it in good condition, or pay an agreed price for it as upon a purchase ; that when the barge was returned it was in a ruined condition, and plaintiffs refused to receive it, and brought this action for its alleged agreed value, as upon a sale and delivery. Each of the plaintiffs testified that these were the terms on which they let the barge to the transportation company. Of course it was essential to the maintenance of their suit in this form—that is, for the price and value of the barge sold and delivered—that they should not have asserted any ownership or control of the barge after its return. If they had sold it, it was no longer their property ; and any subsequent dominion or control over it by them, would have tended to disprove the alleged sale. Kavanaugh had testified in his direct examination that when the barge was returned to Decatur in its damaged condition, he refused to receive it, or to have anything to do with it. On cross-examination he was asked, "Did you not employ one Mr. Mayhan and some others to take it over the shoals for you, and take it to Memphis?" This question was objected to by the plaintiffs, the objection sustained, and the defendant excepted. In this ruling the city court clearly erred.

This ruling of the court, if it had remained unredressed, would require us to reverse this case, even if there be no other error. But the question was not left in that condition. Soon afterwards, as the bill of exceptions informs us, defendant's counsel renewed the inquiry, and the witness then answered it very fully, without further interference from either counsel or the court. This rendered the ruling harmless.

The issue in this case raised the inquiry whether Hobbs was the duly appointed agent of the transporta-

tion company at Decatur, with authority to represent the company at that place, or had been so held out by one having authority to bind the company. Whether he had transacted any business for the corporation at any other place could shed no possible light on that inquiry. The city court did not err in disallowing that question to the witness Hobbs.

Even if Hobbs was proven to have been agent of the corporation when the alleged contract with Kavanaugh Brothers was entered into, this would not authorize an admission made by him to be given in evidence against his principal, unless that admission was made in company with, and at the time of the act of agency it was intended to explain. But the question was clearly admissible for the purpose of laying a predicate for the introduction of impeaching testimony. There was no error in this ruling.

All the rulings on the introduction of testimony are free from error.

A by-law of defendant corporation was put in evidence, in the following language : "The directors shall appoint a general manager, whose duty it shall be to look after the general interest of the company, and all business transactions pertaining to the general management of the business, under the direction of the board of directors." It was proved and not denied that from the fall of 1888, and until after the barge was returned to Decatur in a damaged condition, Farnum was the general manager of the defendant corporation. Each of the plaintiffs, giving their testimony separately, testified that Farnum, while so acting as general manager, and before the agreement affecting the barge was entered into, personally introduced Hobbs to them, informing them that the latter was "agent of the Tennessee River Transportation Company at Decatur, and said he was going to make his headquarters at Decatur, and attend to their business; that any transaction we might have with Hobbs would be entirely satisfactory, and approved by the company; that he was the authorized agent, and that we could deal with him as such." Another witness, a business man at Decatur, testified that Farnum introduced Hobbs to him as agent of the company at Decatur, using almost the identical language testified to by the Kavanaugh brothers. But there was testimony

in conflict with this, some of which denied that Hobbs was agent, while other witnesses only disputed the extent of his authority. Of course, so far as material, this presented a question for the jury. It was proved and not denied that defendant employed barges in connection with its boats, in transporting freight on the Tennessee river ; and it owned several barges.

We do not understand the contract, on which the present suit is sought to be maintained, as strictly a contract of sale and purchase. It was a hiring of the barge at so much per day, to be returned in good order. True, if the barge was not so returned, it was, if the testimony of plaintiffs be believed, to be paid for at an agreed price. But this was nothing more than a previous agreement of the amount of damages to be paid, in the event the contract to return was broken. This presents a different question from that of an absolute bargain and purchase, and also from what is known as a conditional sale. Pressing, present need might justify the hiring, while a promise to return in good condition, or pay an agreed forfeit, might be the most favorable terms on which the use of the barge could be obtained. Peril and the necessity for immediate action may, in some conditions, supply the place of express authority.

The undisputed testimony in this case is that the defendant corporation made free use of barges in the conduct of its regular business, and we can conceive of many emergencies in which the want of them might be so pressing, as not to admit of delay. We think we are in safe bounds when we declare that in such emergency any agent, not in communication with the constituted governing board, may, in the interest of conservation, exercise powers not expressly conferred. This power must be prudently exercised, and must not be carried beyond the real, or apparent necessity.—2 Morawetz Corp., §§ 585–588.

We have indulged in the foregoing remarks, as introductory to what we have to say of charge 17, given at the instance of plaintiffs, and excepted to by defendant. We hold, that under the by-law copied above, Farnum, the general manager, had authority to appoint an agent "to make contracts to bind the company;" and if he did appoint Hobbs such agent, and so informed plaintiffs ; or, if he represented to plaintiffs that he had ap-

[Florence Gas, Electric Light and Power Co. v. Hanby, Receiver, &c.]

·pointed him with the powers set forth in their testimony; and if Hobbs made the contract as set forth in the complaint, and the defendant, or its agents, injured and ruined the barge; and if the use of a barge was within the scope of defendant's business operations, then plaintiffs. were entitled to a verdict. In announcing this principle, we take into the account the nature of the business the defendant corporation was engaged in, covering, as that business did, a large extent of country and necessarily calling for action in emergencies, when a consultation with the governing board would be impracticable. Such intendments might not be indulged, if the corporation had a defined, fixed, stationary place in which its business operations were performed.

Many charges were given at the instance of plaintiffs, and many refused which were requested by defendant. These several charges were asked in writing, and the rulings were severally excepted to. We consider it unnecessary to comment separately on these many rulings. They are all covered and justified by our decision on the former appeal, 93 Ala. 324, 9 So. Rep. 395; and by what is said above.

The judgment of the city court is affirmed.